## CRUTCHFIELD v. HAYNES, HOUSTON, ET AL.

1. A payment and satisfaction of an execution, by the sheriff, is a discharge of the judgment, and no execution can afterwards rightfully issue upon it, for his re-imbursement.

2. A trustee cannot purchase a title adverse to his *cestui que trust,* but his purchase will be considered as made for the beneficiaries under the deed. He may discharge a prior incumbrance for the benefit of the estate, and reimburse himself out of the trust property.

3. The title of a purchaser from the trustee, should not be disturbed, when the latter is able to respond in damages to the *cestui qne trust.*

4. When a *cestui que trust* assents to a violation by the trustee, of his duties, his interest in the trust estate will be subjected to the protection of the trustee.

Error to the Chancery Court of Benton. Before the Hon. W. W. Mason, Chancellor.

THE bill, which was filed by the plaintiff in error, alledges, that on the 5th October, 1839, the defendant Haynes, executed a deed of trust, the defendant Houston being the trustee. The deed recites, that Haynes was indebted to Crutchfield in the sum of $2,507. That part of this sum was secured by a previous deed of trust, executed by Haynes to one Hoker as trustee, to secure that and other debts, due to other persons, which are described. The deed conveyed certain slaves, houses and lots, and other property. That certain of the slaves described in the bill, were sold under executions, upon judgments in favor of Choice, Harben & Co., which it is alledged had been fully satisfied, and so returned by the sheriff, previous to said sale, except as to the costs, and that at said sale, Houston, the trustee, became the purchaser. That the slaves are now in the hands of certain persons, who are described, and who assert title to them. That Houston refuses to execute the trust, &c.

7

The answers of Haynes, Houston and Price, set up the sale under the executions, in favor of Choice, Harben & Co. which were issued previous to the execution of the deeds, but that subsequently, and previous to the sale of the slaves, Price, the sheriff, paid the amount due, except the costs, to the plaintiff in execution, after which the executions were re-issued, and levied on the slaves, which were purchased by Houston, who paid the purchase money to Price, the sheriff, and that he subsequently sold the slaves, the woman, Sophia, to one Francis, and the boy Charles, to one Grant, to reimburse himself the purchase money paid to Price.    Many other facts are stated in the bill, and answers, but as they do not influence the decree of the court, need not be here stated.

The chancellor dismissed the bill, from which this writ is prosecuted.

MORGAN, for plaintiff in error.

1. The question in this case is not between a defendant in execution and a purchaser at the sale of the sheriff—but the question is, whether the defendant in execution had title at the time of the sale by the sheriff.

2. The sale by Price was void and conveyed no title. The judgment was satisfied on the docket before the execution issued.    Boren v. McGehee, 6 Port. 432.    There was never an actual levy on the property, but it was in Haynes's possession at the time the deed was executed.    Cobb v. Cage, 7 Ala. 619.    The lien of the execution became dormant by the payment of the judgment to the plaintiff in execution. Wood v. Gary, 5 Ala. R. 43, 47, 54.    And no consent of Haynes could continue the lien.    Br. Bank at Mobile v. Ford, 13 Ala. 431.

3. But if the execution was not void, but only voidable, all Houston's rights as against bona fide incumbrancers, depend on the authority of Price to sell the particular property —it being purely a question of title in Haynes, at the time of the purchase, and Price's right to sell and convey, (if he had any,) depended on the continuance and priority of the lien of the execution.    There was no lien at the time of the sale.    Rutland's Adm'r v. Pippin, 7 Ala. R. 469 ; Boren v.

McGehee, 6 Port. 446; Johnson v. Cunningham, 1 Ala. 257; 4 Ib. 323.

4. But Price, as the proof shows, did not sell under the first execution, but under the alias; and he sold the property the same day the execution issued.

5. Price agreed with Haynes to delay the sale of the property, when he could have made the money. Wood v. Gary, *supra.* But if the agreement was void, because it was to do an illegal act, (2 Johns. Rep. 193; Hudson v. Wilkins, 7 Greenl. 113; Ayres v. Hutchins, 4 Mass. 370; Churchill v. Perkins, 5 Mass. 541; Id. 585;) no authority was conferred on Price to continue the lien, or to hold the property subject to sale—and the rights of the *cestuis que trust* must prevail. And Price had no right to keep the execution open for his benefit. 5 Hill, 336.

6. Houston cannot claim under his purchase, because, as trustee he had full knowledge of the incumbrance, and knew that the judgment was satisfied. Boren v. McGehee, *supra.*

S. F. Rice, for the defendant in error.

1. The deed of trust to E. L. Woodward as trustee, being subsequent to the deed of trust under which complainant asks relief, being for the same property, and being for the benefit of the complainant, and being assented to by him, is a bar to the relief he seeks. As a party to this subsequent deed, the complainant is estopped from denying the truth of its recitals and admissions.

2. The mere private receipt of a plaintiff in a judgment, to his *attorney,* for the amount of the judgment, although spread on an execution docket, cannot be regarded as the satisfaction of the judgment, or equivalent to a return of satisfaction. It is at most *prima facie* evidence, that the attorney has advanced the money to his client. Such a receipt cannot prevent the issuance of another execution, because it is not tantamonnt to an assertion by the sheriff, that the execution is satisfied. Gilchrist v. Branch Bank at Montgomery, 11 Ala. Rep. 408.

3. The costs of the clerk of the circuit court were certainly unpaid, and not collected when the alias execution issued, and this would sustain the sheriff's sale made under a

levy indorsed on the original *fi. fa.* and also on the alias, in the absence of any fraud. Even if the sale was voidable, the complainant shows no right in equity to avoid it, and thus entail a heavy loss upon his own trustee, who has acted in the most perfect good faith. McNutt v. Wilcox, 3 How. Miss. Rep. 417; Fournier v. Curry, 4 Ala. R. 321; Abercrombie v. Chandler, 9 Ala. Rep. 625.

4. As to the right of any trustee to purchase, even at his own sale, see Creagh et al. v. Savage, 9 Ala. Rep. 959. But the trustee in this present suit, buys at a sale made by the sheriff under an execution having a lien paramount to the deed of trust.

5. The other *cestuis que trust* were necessary parties. They are not so numerous as to admit this complainant to dispense with them. This objection is taken in Houston's answer, &c. &c.

6. The delay of the complainant in filing this bill, and all his other acts touching the matters in controversy, are sufficient to defeat his claim in a court of conscience, which is a name for the court of chancery.

DARGAN, J.—A trustee cannot, by buying the trust estate, under a prior mortgage, lien, or incumbrance, acquire a title adverse to his *cestui que trust.* 5 John. Ch. Rep. 409; 4 Paige's Rep. 578; 6 Dana, 176; 10 Ala. Rep. 185. But it is equally true, that a trustee is clothed with all power necessary to protect the trust estate, and may discharge a prior incumbrance for the benefit of the estate; and will be entitled to be re-imbursed out of the proceeds of the trust property. See 10 Ala. Rep. 185. If this were not the law, a trustee could not protect the trust property for the benefit of the *cestui que trust.*

From these rules it follows, that the purchase of Houston, who was the trustee, inured to the benefit of the *cestui que trust* under the deed, and the slaves purchased by him were still trust property, but liable to refund to him the amount he advanced at the sheriff's sale, if the execution, at the time of the sale, was a subsisting lien on the slaves, which was older than the deed of trust. The legal title, however, under

any circumstances, was vested in Houston, and his purchasers of the two slaves, Sophia and her child Charles, by their purchase, acquired the legal title—they paid a fair price—Houston, the trustee, has received the money, and it is neither alledged, nor shown, in any way that he is unable to account for the money he received on the sale of the two slaves. The equity of the purchasers therefore, as against Houston, is equal to the equity of the *cestuis que trust*, and they having the legal title by a fair sale, from the trustee, and he able to respond either to the *cestuis que trust*, or to the purchasers, the title of the purchasers should not be disturbed.

But the question is, shall Houston, the trustee, be permitted to retain the money he received from the purchasers for Sophia and her child, to indemnify him for the money he paid the sheriff, Price, at the sale of the slaves by him, under the execution in favor of Choice, Harben, & Co., against Haynes, the grantor in the deed of trust. The execution was older than the deed, and was a valid lien on the slaves, at the time the deed was executed. But it is admitted by the answers of Haynes, Houston and Price, that after the deed was executed, Price, the sheriff, advanced the money to the plaintiff in the execution, to avoid the consequences of his neglect to make the money. This advance by him was a satisfaction of the judgment in law, to the extent of the money advanced, and no execution could rightfully issue to indemnify Price, the sheriff. See 8 Ala. Rep. 314; 6 Port. 445; 4 Ala. 323; 1 Ala. 227. It is true, that as no satisfaction appeared of record, if a sale had been made to a stranger, who had no notice of the satisfaction of the judgment, his title would have been good. See Boren v. McGehee, 6 Porter, 445, and 4 Ala. 223.

But we have seen that Houston, being a trustee of the slaves, the question of title between him and his *cestuis que trust* cannot arise; for all his acts must be treated as enuring to the benefit of the beneficiaries under the deed ; and he cannot buy up a title adverse to his *cestui que trust*. The only question that can arise is, was the execution a valid lien on the slaves, at the time they were sold by the sheriff under it ?

Beyond doubt it was not. The payment of the money by Price, from whatever motive it was done, operated as a satisfaction of the judgment, to the extent of the payment; and the execution, so far as it was paid, could no longer operate as a lien on the slaves. Houston, the trustee, in bidding for the slaves, and paying the amount bid to the sheriff, discharged no lien except the amount of the cost of the execution, which was not paid by Price, and therefore he cannot retain against the *cestui que trust* the amount thus paid by him.

It is not even alledged in the answer of Houston, that he did not know at the time the slaves were sold by the sheriff, that Price had advanced the amount due the plaintiffs in the execution; but on the contrary it is admitted that he had been informed that Price had advanced to Choice, Harben & Co. the amount due them on the execution. It was then the duty of Houston, as trustee, to have resisted the sale of the slaves under the execution, and not to have become the purchaser under it; for he knew of the payment made by Price, and the execution could no longer retain the lien on the slaves as against him, or the *cestui que trust* under the deed, and he cannot be protected by law, further than the execution was a lien on the slaves, and which extended to the cost only.

It is true, that if Crutchfield knew that Price had advanced the money to Choice, Harben & Co., and also the sale by the sheriff, and assented to it, then his interest in the trust fund would be subjected to indemnify the trustee, Houston; for the rule is, that if a *cestui que trust* assents to the violation of the duties of the trustee, his interest in the trust estate must be subjected to the protection of the trustee. 1 Beavan's Rep. 129. But there is no proof, independent of the answer, that Crutchfield knew of the payment of the money by Price, the sheriff, to Choice, Harben & Co., or that he knew of, or assented to the sale of the slaves by the sheriff, and as the answers are not responsive to the bill, set-

ting forth these facts, the bill requires they should be proved, independent of the answer.

From this view it results, that the decree must be reversed, and the cause remanded for further proceedings.

CHILTON, J., not sitting.