FREDERICK FISCHBECK

*v.*

FRANCES A. GROSS.

*Filed at Ottawa November 17, 1884.*

1. TRUST—STATUTE OF FRAUDS—*conveyance intended for the benefit of one person, fraudulently procured to be made to another.* If A was intending to convey land to C, and B interfered, and advised A not to convey directly to C, but to convey to himself, promising if A would do so, he, B, would hold the land in trust for C, equity will enforce the trust upon the ground that B obtained the title by fraud and imposition upon A. But if

FISCHBECK v. GROSS. 209

Statement of the case. Brief for the Appellant.

B had taken no measures to procure the conveyance to himself, his verbal promise to hold the property for C would fall within the Statute of Frauds.

2. A husband intending to convey an interest in land to his wife, consulted with a friend and his attorney in respect thereto, and before leaving this State to return home, directed the attorney to prepare a deed from him to his wife, to be forwarded to him for execution. The friend had the attorney make him the grantee, and both he and the attorney wrote to the grantor, stating such to be for the best, and that the grantee would reconvey when asked, and in pursuance of such assurance the husband conveyed to his friend instead of his wife, but the grantee afterwards refused to convey to the wife: *Held*, that the case was not within the Statute of Frauds, and that the grantee was a trustee by his own procurement and fraud.

3. TRUSTEE—*as to proper expenditures to be allowed to trustee.* On bill to have a trust declared and the holder of real estate compelled to convey the same to the complainant as the real owner, it was held error, in stating an account between the parties, to reject an item for taxes paid, and for proper repairs on the premises before suit brought. The payment of interest upon a debt secured by a mortgage upon the premises, was also a proper charge to be allowed upon taking the account, as the premises were thereby relieved from the incumbrance to that extent.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Frances A. Gross, suing in her own right, and as executrix of the estate of William H. Gross, deceased, exhibited her bill in chancery in the court below, against Frederick Fischbeck, for the purpose of having a trust declared in her favor in respect of certain premises for which the defendant held the legal title. Upon the hearing, the court decreed in favor of the complainant. The defendant appealed.

Messrs. MOSES & NEWMAN, for the appellant, contended that the evidence was not sufficient to show a trust, and the evidence being purely oral, the case fell within the Statute of Frauds, unless appellant acted *ex maleficio.*

Even in the class of cases where a trust can be shown by parol, the court will not act upon it if it be not irrefragable, or if it be contradicted by other evidence. *Lantry* v. *Lantry,* 51 Ill. 458; Hill on Trustees, 157.

14—112 ILL.

No trust can be enforced for the reason that the conveyance was made to defraud creditors of the grantor. *Ex turpi non oritur actio. Fast* v. *McPherson,* 98 Ill. 496; *Dunaway* v. *Robertson,* 95 id. 419; *Whipple* v. *Whipple,* 109 id. 418; *Murphy* v. *Hubert,* 16 Pa. St. 56.

The language employed by a party to show a trust, must show, unequivocally, an intention to create the same. *Stone* v. *Hackett,* 12 Gray, 227; *McFadden* v. *Jenkins,* 1 Hare, 462; *Kekewich* v. *Manning,* 1 DeG., M. & M. 176; *Young* v. *Young,* 80 N. Y. 422; *Martin* v. *Funk,* 75 N. Y. 134; 2 Pomeroy's Eq. sec. 996.

A mere unfinished, inchoate purpose expressed does not create a trust. *Dellinger's Appeal,* 71 Pa. St. 425.

As to a prospective gift, see *Zimmerman* v. *Streeper,* 75 Pa. St. 154; *Cushing* v. *Blake,* 31 N. J. 700.

Where the determining act remains *in fieri,* the intention to deliver does not execute the gift, and equity will not decree. *Trough's Estate,* 75 Pa. St. 118; *Carhart's Appeal,* 78 id. 100.

This court, as early as 1849, in *Clarke* v. *Lott,* 11 Ill. 115, decided that "if the transaction on which a voluntary trust is attempted to be established is still executory or incomplete, the court will decline all interference in the matter."

In *Otis* v. *Beckwith,* 49 Ill. 121, some of the English authorities cited by us were reviewed. Browne on Statute of Frauds, 106, 108; *Foster* v. *Hale,* 3 Ves. Jr. 696; *Badgley* v. *Votrain,* 68 Ill. 25; *Padfield* v. *Padfield,* id. 210.

The master erred in disallowing all expenditures for repairs, payment of interest and insurance prior to the date of the deed, and for taxes paid.

Mr. CHARLES F. WHITE, and Mr. M. L. WHEELER, for the appellee:

Trusts are not necessarily to be declared in writing, but only to be manifested and proved by writing, for if there be written evidence of the existence of such a trust, the danger

of parol declarations, against which the statute was directed, is effectually removed. *Kingsbury* v. *Burnside*, 58 Ill. 329; Lewin on Trusts, 63; *Cornelius* v. *Smith*, 55 Mo. 528; *Johnson* v. *Delaney*, 35 Texas, 42; *Throop* v. *Hatch*, 3 Abb. Pr. 32; *Steere* v. *Steere*, 5 Johns. Ch. 1; *Malin* v. *Malin*, 1 Wend. 625; *Riggs* v. *Swan*, 6 Jones' Eq. 118; *Forster* v. *Hale*, 3 Ves. Jr. 696, and 5 id. 308.

Where there is some written evidence inconsistent with the fact that the supposed purchaser was the actual purchaser, further evidence by parol is admissible to prove the truths of the transaction. 2 Sugden on Vendors, (7th Am. ed.) 911; Roberts on Frauds, 101, 102.

Where it appears that a trust was created by verbal agreement, if the defendant fails to set up the statute, it will be considered as waived. *Carpenter* v. *Davis*, 72 Ill. 14; *Lear* v. *Chouteau*, 23 id. 39; *Deniston* v. *Hoagland*, 67 id. 268.

Appellant became a trustee by his own procurement, and his attempt to keep the property under such circumstances, constitutes a fraud, which precludes him from setting up the Statute of Frauds. *Kingsbury* v. *Burnside*, 58 Ill. 336; *Lantry* v. *Lantry*, 51 id. 458; *Barrell* v. *Hanrick*, 42 Ala. 60; *Miller* v. *Pearce*, 6 Watts & S. 97; *Foote* v. *Foote*, 58 Barb. 258; *Noll* v. *Carter*, 15 W. Va. 567; *Gilmore* v. *Johnson*, 29 Ga. 67; Perry on Trusts, sec. 166.

One who has obtained another's property from him by fraud, is a trustee *ex maleficio*. *Christy* v. *Sill*, 95 Pa. St. 380.

If A induces B to part with title to land on an assurance that A will convey back a portion, upon A's refusal to do so he is held a trustee *ex maleficio* for B. *Beegle* v. *Wentz*, 55 Pa. St. 399; *Cox* v. *Arnsmann*, 76 Ind. 210.

Where a person fraudulently intercepts a gift intended for another, by promising to hand it over if it is left to him, equity will compel an execution of the promise. Perry on Trusts, sec. 181; *Hoge* v. *Hoge*, 1 Watts, 213; *Devenish* v. *Baines*, Prec. Ch. 4.

A trustee is entitled to no compensation for managing trust property, in the absence of a contract. *Huggins* v. *Rider,* 77 Ill. 360.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Frances A. Gross, in the circuit court of Cook county, against Frederick Fischbeck, to establish a trust in certain premises in Chicago in favor of complainant, and to compel a conveyance thereof to her. The defence relied upon was of a three-fold character: First, that no trust was created; second, the Statute of Frauds; and third, that the conveyance from Gross to him was made with the intent to hinder and delay the creditors of Gross.

Many of the facts in reference to the transaction in controversy are undisputed, among which are the following: That Charles V. Gross, the husband of complainant, in July, 1877, was the owner in fee of the' undivided five-sixteenths of the lots in question, subject to a mortgage in favor of the Connecticut Mutual Life Insurance Company, amounting to some $4000; that on or about July 30, 1877, Charles V. Gross conveyed the premises to appellant;. that appellant paid no consideration whatever for the conveyance. Nothing, however, appears on the face of the deed made to appellant, indicating the character or object of the conveyance; but the parol evidence and letters prove, beyond controversy, that the land was deeded to appellant to hold for the benefit of appellee. In June, 1877, Charles V. Gross, who then resided at St. Joseph, Missouri, went to Chicago to consult with appellant in regard to conveying the property to his wife. At the suggestion of appellant they called upon the attorneys of the latter in Chicago, and after a consultation the attorneys were directed to prepare a deed conveying the property to appellee, which was to be forwarded to Gross, at St. Joseph, Missouri, for execution. Gross returned to Missouri, and

appellant, after Gross had left, caused a deed to be prepared by his attorneys, conveying the property to himself, instead of to appellee, and the deed, thus prepared, was sent to St. Joseph, Missouri, to be executed. The following letter was sent by the attorneys with the deed:

"CHICAGO, *July 30, 1877.*

"*Charles V. Gross*—In compliance with your request, we have made a transfer of your interest in the estate of John L. Gross. We drew the deed to Mr. Fischbeck, instead of your wife, in order to avoid any suspicion that the transfer was made to avoid creditors. Mr. Fischbeck will quitclaim it back to you for your own protection; but this last deed must not be recorded. It will be good as between you without recording. Sign the enclosed deed, acknowledge the same before a notary public, and get a certificate of magistracy, and return at once for recording. Enclosed please find bill for our services and cost of recording."

Appellant also wrote Gross a letter, as follows:

"CHICAGO, *July 30, 1877.*

"*Dear Charles*—The papers are made out and sent to you. You can have them signed over to Fanny, or you may leave it as it is fixed. I will do in your favor the best I can. I think it is better you leave it for a while in my hands. The lawyer thought it was better, too."

After the receipt of these letters the deed was executed, and returned to Chicago, and placed upon record.

It is apparent from the evidence that Charles V. Gross intended to convey the property directly to his wife. The attorneys were directed to prepare the deed conveying the property to her, and the only logical conclusion that can be reached from all the evidence is, that the conveyance would have been made directly to her had not appellant interposed, and ordered and directed that the conveyance should be made

to himself, with the understanding that he would hold the property in trust for appellee. If our view of the evidence is the correct one, it is plain that the case is one, in its facts, which falls directly within the rule announced in *Lantry* v. *Lantry*, 51 Ill. 458. In the case cited, where the facts are quite similar to the facts in this case, it is said: "If A voluntarily conveys lands to B, the latter having taken no measures to procure the conveyance, but accepting it, and verbally promising to hold the property in trust for C, the case falls within the statute, and chancery will not enforce the parol promise. But if A was intending to convey the land directly to C, and B interfered, and advised A not to convey directly to C; but to convey to him, promising, if A would do so, he, B, would hold the land in trust for C, chancery will lend its aid to enforce the trust, upon the ground that B obtained the title by fraud and imposition upon A." See, also, Pomeroy's Equity, sec. 1055; *Beegle* v. *Wentz*, 56 Pa. St. 399.

Gross, in his evidence, testified that he ordered the attorneys whom he engaged to prepare the deed, to make it to his wife, and he left the attorneys' office with the understanding that the deed was to be made conveying the property to her. In this he is not contradicted by appellant or the attorneys, all of whom were present when the direction was given to make out the deed. The letters written by the attorneys and appellant corroborate Gross upon this point, so that there is no doubt as to the fact. It is also equally plain, from the evidence, that the deed would have been made to appellee, as originally directed, had not appellant interfered, and caused the deed to be made to himself. If, then, appellant, by his own act, had the property conveyed to himself, when Gross, the grantor, intended to convey to his wife, appellant became trustee by his own procurement, and under the authorities cited he is to be regarded as holding the property in trust for appellee. The Statute of Frauds can not, under the facts here established, be invoked to aid in the commission of a

fraud, which would be the case if appellant was allowed to hold the land.

Much has been said in the argument in regard to the conveyance having been made to defraud creditors; but it will not be necessary to devote much time to this branch of the case. No creditors seem to be complaining, and so far as appears, this defence is not resorted to in order to aid any creditor, but solely to enable appellant to hold property not owned by him,—property for which he never paid a dollar. Surely, the equities of the case are all against the claims of appellant.

But conceding the general rule to be that a court of equity will not aid a party to get back property which he has conveyed to another with the intention of defrauding creditors, the question recurs whether such a case is presented by this record. Gross himself testified, that in July, 1877, when the deed was made, he owed nothing, and had no creditors except his brother, George, and appellant, and that they both advised him to make the deed. It also appears from one of the letters read in evidence, that Mary Fischbeck, who represented whatever claim the estate of John L. Gross held against the grantor in the deed, knew of and advised the conveyance. Appellant relied upon various letters written by Gross to different members of his family, to establish his indebtedness. While it is quite evident from the letters that Gross was not a thrifty business man, and did not possess a large amount of property, and might be somewhat embarrassed in his affairs, yet, with one exception, the letters do not show to whom he was indebted, or the amount. If Gross was insolvent, as claimed by appellant, why did he not introduce proof showing the names of creditors, and the amounts due them? In a letter to his father, dated May 27, 1876, which was read in evidence by appellant, Gross gives a detailed statement of his debts at that time; and from this statement, after deducting the amount due him, which he expected to apply on his

debts, he would only be indebted at the end of the month in the sum of $500. The evidence introduced to show that Gross was insolvent, and that the deed was made to hinder, delay and defraud creditors, is, in our judgment, too vague, uncertain and indefinite to be relied upon to establish that fact.

Appellant, as appears from the evidence, paid $160, on April 23, 1877, interest on the mortgage on the premises. In stating the account, the master in chancery refused to allow appellant credit for this amount. As this was paid to relieve the premises from an incumbrance, we see no reason why the amount should not have been allowed, in stating the account. The fact that the money was paid at the request of William Gross, one of the tenants in common, did not matter. By the payment of the money the land was so far relieved from an incumbrance resting upon it, and each one of the owners should be charged with the amount paid, in proportion to the land owned by him.

Sixty-four dollars and forty-four cents was expended by appellant for repairs on the premises prior to July 20, 1877. This amount the master rejected. This, in our judgment, was a proper charge, and should have been allowed.

In other respects the decree of the circuit court is correct. The decree of the circuit court will be reversed, and the cause remanded, with directions to so modify the decree as to allow the two items indicated herein.

*Decree reversed.*