PRENTISS D. CHENEY, Guardian,

*v.*

HARRY W. ROODHOUSE.

*Filed at Springfield November 1, 1890.*

1. GUARDIAN AND WARD—*jurisdiction of county court.* In the matter of an accounting in the county court by a guardian, in respect to his administration of the trust confided to him, the powers of that court are co-extensive with those of a court of chancery, and it possesses a similar jurisdiction, and adopts the same forms and mode of procedure.

2. SAME—*form of guardian's report—as to the mode of computation.* It was objected to the report of a guardian to the county court, that it did not show the condition of his account at the end of one year after his appointment, and the balance then in his hands, and the balance in his hands at the end of each year thereafter. The report showed that the guardian did not loan out the money of his ward, but retained and used it himself. But the account rendered computed the amount in the guardian's hands upon the principle of annual rests, so that the rights of the ward were as fully protected as though the report had been made in proper form.

3. SAME—*authority of guardian—acting without an order of court—discharging incumbrance.* A guardian may, without the direction of the court, pay a claim which is secured by deed of trust, or mortgage, which is a direct and immediate charge upon the land of his ward, and which, if left unpaid, would probably destroy the ward's interest.

17—135 ILL.

4.  SAME—*repairs and improvements—without an order of court.* A guardian may repair his ward's premises, but he is not authorized to build or make extensive permanent improvements, without first having obtained permission of the county court. But when the improvements are such that the court, on application, would have ordered made, and they are proportionate to the ward's pecuniary ability to pay, and beneficial to him, and the prices paid are reasonable, the court will ratify the expenditures, and reimburse the guardian therefor.

5.  SAME—*generally, an order of court advisable.* It is advisable, however, that a guardian should, when it is practicable, and especially in cases of doubtful propriety, act under the direction of the court in discharging incumbrances on the land of his ward ; but where he has acted in good faith, and advisedly, and his acts have been beneficial to the interests of the ward, justice requires the approval of such acts.

6.  Unauthorized acts of a guardian, even if done in good faith, are at his own risk ; but if they prove beneficial to the ward the court will sometimes adopt them, especially if the court would have directed them if asked beforehand.

7.  SAME—*co-parcener who becomes guardian—as to matters prior to his guardianship.* Where one of several tenants in common cultivates land belonging to himself and brother, and divides the rent into three shares, paying two-thirds thereof to the mother of his brother, entitled to dower, and afterward is appointed guardian of his brother, he will not be liable to account as guardian for his ward's part of such rent, nor will his sureties be liable for such rents. He may be liable to account, as co-parcener, for the benefits derived for the use of the premises before his guardianship, but not in his capacity as guardian.

8.  SAME—*guardian paying over rents—liability.* If a guardian pays the rents due his ward to the mother of such ward, he will be required to account for the same, with interest, in his settlement of his guardianship.

9.  SAME—*interest chargeable to guardian—until proper tender to his successor.* On the approval of a guardian's final account by the county court, and before the final order was entered appointing his successor, the guardian tendered to the county judge the sum at that time found due from him, but not as much as was afterward found due on appeal : *Held,* that such tender did not authorize the court to refuse to charge the guardian so accounting with interest thereafter. To have that effect the tender should have been made to his successor, and of the whole amount due.

10.  EVIDENCE—*letter in one's own favor.* A letter written by a guardian, narrative of past transactions, is not competent testimony against his ward or his successor in office, on a settlement of the guardianship.

11. APPEALS—*reviewing the facts—in chancery cases.* The rule that the findings of fact by the Appellate Court are conclusive on error or appeal to this court, has no application to chancery cases.

12. SAME—*on settlement of guardian's account.* The same rule should prevail in respect to the statutory proceeding of an accounting by a guardian in the probate court, since it is, in substance, a chancery proceeding.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Greene county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Peter Roodhouse died intestate on June 9, 1879, in Greene county, Illinois, leaving him surviving, Harriet Roodhouse, his widow, and two sons, Harry W. Roodhouse (appellee herein) and Benjamin T. Roodhouse, as his only heirs-at-law. The first named son was the issue of a former marriage, and was twenty-one years of age, and the other son was the issue of his last marriage, and was about six years old. The intestate left considerable personal property, and died seized of his homestead farm in Greene county, containing about 1090 acres of land, a farm of 360 acres in Scott county, and a farm of 160 acres in Mason county. His indebtedness at the time of his death exceeded $47,000, and $8000 of this indebtedness was drawing ten per cent interest, was secured by a deed of trust on the Scott county farm, and was not due until 1883. Letters of administration were granted to the widow and to appellee, but in October following the death of the intestate, the widow moved to Washington, D. C., taking her infant son with her, and fixed her residence there, and the entire management of the estate devolved upon appellee. The entire personal property was consumed in paying the widow's award, the indebtedness allowed against the estate in the probate court, and a portion of the mortgage debt on the Scott county farm.

On October 17, 1881, appellee was appointed guardian of Benjamin T. Roodhouse, his brother. On January 6, 1888, the ward, having attained the age of fourteen years, nominated

appellant to be his guardian, and the nomination was duly confirmed by appointment of the county court. From the date when he first assumed the functions of guardian, until after he was superseded by the new guardian, appellee made no report to or settlement of his accounts with the court. On January 16, 1888, appellee filed his report as guardian, showing $5505.17 in his hands and due the ward, and appellant filed numerous exceptions to such report. The matter of the accounting was continued from term to term, until March 8, 1888, when the county court found $5718.27 to be due from appellee as guardian, and ordered him to pay the same to appellant, as his successor in office. The new guardian appealed from that order to the circuit court, and in the latter court a re-statement of the account was made, and exceptions filed thereto. The cause was heard in the circuit court, upon the report and exceptions, and the exceptions were in part sustained and in part overruled, and appellee was required to amend his account by increasing the yearly rents due the ward on his Greene county lands, from $850 to $900 per annum, and by adding to the debit side thereof interest from March 8, 1888, to November 22, 1888, at the rate of six per cent per annum, and by deducting from the credit side thereof the sum of $675, the total amount of compensation and commissions charged. Thereupon the circuit court found $7676.47 to be the amount in the hands of appellee belonging to the ward, and ordered its payment to appellant, and that upon its payment, and the payment of the costs of the proceeding, appellee be discharged from further liability. This order of the circuit court was affirmed, on appeal, by the Appellate Court, and the cause was then brought to this court by this appeal.

Mr. T. S. CHAPMAN, for the appellant:

The report should show the amount in the guardian's hands at the end of each year from his appointment. *Bond* v. *Lockwood*, 33 Ill. 222.

A guardian is chargeable with whatever he might have received for rents for his ward's lands.  *Bond* v. *Lockwood*, 33 Ill. 222 ; Story's Eq. Jur. sec. 64 g.

As to allowance for expenditures on ward's real estate, see *Davis* v. *Harkness*, 1 Gilm. 179 ; *Muller* v. *Benner*, 69 Ill. 108.

All the crops growing and unmatured on the lands of Peter Roodhouse at the date of his death, June 9, 1879, were immediately vested in his two sons, as a part of his real property, and the administrator had no rightful authority to appropriate the same.  The matter has been fully settled by the Supreme Court.  *Green* v. *Massie*, 13 Ill. 363 ; *Creel* v. *Kirkham*, 47 id. 344 ; *Stark* v. *Brown*, 101 id. 400 ; *Crosby* v. *Loop*, 13 id. 627 ; *Phelps* v. *Funkhouser*, 39 id. 405 ; *Ryan* v. *Duncan*, 88 id. 146 ; *Foltz* v. *Prouse*, 17 id. 487 ; *Sugden* v. *Beasley*, 9 Bradw. 77.

Mr. MARK MEYERSTEIN, for the appellee :

No questions can be considered on appeal from or writ of error to the Appellate Court, except such as were presented to that court.  *Thayer* v. *Peck*, 93 Ill. 357 ; *Hyslop* v. *Finch*, 99 id. 171 ; *Nat. Bank* v. *Le Moyne*, 127 id. 253.

Effect of affirmance of the judgment below by the Appellate Court : *Nat. Bank* v. *LeMoyne*, 127 Ill. 253 ; *Tibballs* v. *Libby*, 97 id. 552.

Mr. JUSTICE BAKER delivered the opinion of the Court :

Two preliminary questions are raised by appellee.  It is insisted that the second, fourth and thirteenth assignments of error upon the record of the Appellate Court involve questions to which the attention of that court was not called, and that therefore they can not be here considered.  This claim is not well founded.  The questions raised by said assignments were elaborately argued in the briefs submitted in that court, and the substance of the alleged errors was fully covered by the second, seventh and eighth errors there assigned, and the

changes here made in the phraseology of the assignments merely render them more definite and specific.

It is also claimed that the questions involved in the case are questions of fact, and that therefore the judgment of the Appellate Court thereon is final and conclusive. The questions at issue are principally questions of law and mixed questions of law and fact, and these were sufficiently preserved by the exceptions filed to the report and account of the guardian, and the rulings of the court thereon. But even the questions of fact involved may properly be reviewed in this court. In the matter of an accounting in the county court by a guardian, in respect to his administration of the trust confided to him, the powers of that court are co-extensive with those of a court of chancery, and it possesses a similar jurisdiction, and adopts the same forms and mode of procedure. *In re Steele et al.* 65 Ill. 322; *Bond* v. *Lockwood,* 33 id. 212; *Gilbert* v. *Guptill,* 34 id. 112; *Brandon* v. *Brown,* 106 id. 519; *Millard* v. *Harris,* 119 id. 198.

It has been frequently held, that the rule which makes the findings of fact by the Appellate Court conclusive on error or appeal to this court, has no application to chancery cases, and that in such cases this court may review the evidence as to the facts found. (*Moore* v. *Tierney,* 100 Ill. 207; *Fanning et al.* v. *Russell et al.* 94 id. 386; *Joliet and Chicago Railroad Co. et al.* v. *Healy et al.* id. 416; *Stillman* v. *Stillman,* 99 id. 196; *French et al.* v. *Gibbs,* 105 id. 523.) We think that the same rule should prevail in respect to the statutory proceeding of an accounting by a guardian in the probate court, since it is, in substance, a chancery proceeding. The late case of *Kingsbury* v. *Powers,* 131 Ill. 182, was, like this, a proceeding in that court for the final settlement of the accounts of a guardian, and this court there took cognizance of the questions of fact as well as of law in contention.

The first exception taken to the report of the guardian is, that it does not show the condition of his account at the end

of one year after his appointment, and the balance then in his hands, and the balance in his hands at the end of each year thereafter. The report shows that the guardian did not conform to his statutory duty to keep his ward's money at interest upon securities approved by the court, but that, on the contrary thereof, he retained and used such money. He has, however, in his report, charged himself with interest upon the several sums of money received by him, at the rate of six per centum per annum from the respective dates that they were severally received, and has made annual rests, thereby allowing interest upon accrued interest, in conformity with the requirements of the rule held by this court in *Bond et ux.* v. *Lockwood*, 33 Ill. 212, and other cases. The Appellate Court, in their opinion herein, by CONGER, J., say that the account rendered "computes the amount upon the principle of yearly rests, so that the rights of the ward are as fully protected as though such report had been made in proper form;" and further say: "We have taken the trouble to go through with the account as presented in the record, each year by itself, and making rests at the end of each year, as required by the rule, and the result is so near that shown by the report as filed, as to show that, in principle, they are the same, the difference being only such as would naturally arise in making so many calculations." The correctness of this conclusion of the Appellate Court is not challenged by appellant, and we therefore assume its accuracy without taking the time necessary to verify it by making numerous computations. The objection, then, is predicated upon mere matter of form, and affords no sufficient ground for reversal.

In the early part of the year 1882 the Greene county lands were, by decree of court, partitioned between appellee and his ward, and the Scott county farm was assigned to Harriet Roodhouse, the widow, as dower, and the Mason county farm was, by order of court, sold, and the proceeds of such sale divided between appellee, his ward, and the widow, in proportion to

their interests therein as determined by decree of court. The decree giving the Scott county farm to the widow required the administrator to pay, in due course of administration, the $8000, and interest, secured by a deed of trust thereon, and at the same time made said $8000 and interest a lien on the real estate assigned to appellee and to his ward. It appears from the reports of appellee, as administrator, which were offered in evidence, that he expended $10,400 in making payments upon that incumbrance. It further appears in evidence that he collected, in his capacity of administrator of his father's personal estate, the rents both of the Scott county and the Mason county farms, for the years 1880 and 1881, amounting to something over $3000. After the payment of the $10,400 above mentioned on the mortgage debt, there still remained due thereon $940.06, and this appellee paid, and charged one-half of the amount, $470.03, to his ward. It is contended by appellant, that as the $470.03 was paid out of the personal estate of the ward, without an order of court authorizing such payment, appellee should not be credited therewith, and also that one-half of the more than $3000 rents should have been credited to the ward, since such rents were not personal assets of the estate of the intestate, and one-half of them were funds pertaining to the guardianship. In respect to this $1500 in rents appellee stands in no worse position than he would have occupied had he collected them knowing they were funds belonging to the guardianship, instead of supposing, as he ignorantly did, that they were assets of his deceased father's personal estate. It is manifest that the ward got the full benefit of both the $1500 in rents and the $470.06, since they were applied in discharge of a valid debt which was a lien upon his real estate, and the discharge of such debt was essential to the preservation of his estate.

A guardian may, without the direction of the court, pay a deed of trust or mortgage which is a direct and immediate charge upon the land, and which, if left unredeemed, would

probably destroy the ward's interest. (2 Perry on Trusts, sec. 607; Macpherson on Infants, 285; *Roland's Heirs* v. *Barkley*, 1 Brock. 356; 9 Am. and Eng. Ency. of Law. p. 114, and authorities cited in notes; *Wright* v. *Conley*, 14 Bradw. 551.) It is advisable that the guardian should, when it is practicable, and especially in cases of doubtful propriety, act under the direction of the court in discharging incumbrances on the land of the minor; but where he has acted in good faith, and advisedly, and his acts have been beneficial to the interests of the ward, and have probably had the effect of preventing a foreclosure and the loss of the estate, justice requires the approval of such acts. Here the indebtedness seems to have been a lien, not only upon the Scott county farm, in which the ward had a reversionary interest in fee after the expiration of his mother's life estate, but also upon his Greene county lands, and such indebtedness was bearing ten per cent interest, and the personal assets of his father's estate, except such portion as was applied in reduction of the mortgage, had already been exhausted in the payment of the probated claims. There is no question but that it was for the interest of the ward that these funds should be applied as they were.

It appears that appellee expended $1198.30 in tile-draining some flat lands on the ward's farm and in repairing and improving the brick dwelling house thereon. It is objected to these expenditures that they were made without having been authorized by an order of the county court. Unauthorized acts of a guardian, even if done in good faith, are at his risk; but if they prove beneficial to the ward, the court will sometimes adopt them. He may repair, but he is not authorized to build or make extensive permanent improvements without he has first received permission so to do from the probate court. Where, however, the improvements are such that the court, on application, would have ordered them made, and they are proportionate to the ward's pecuniary ability to pay, and beneficial to him, and the prices paid are reasonable, the courts

will ratify the expenditures therefor and reimburse the guardian. (9 Am. and Eng. Ency. of Law, pp. 107, 116, and cases cited; Macpherson on Infants, 295.) The uncontradicted testimony is, that the repairs and improvements here in question were necessary and proper, to the interest of the ward, and paid for at reasonable rates. The county court, the circuit court and the Appellate Court have all approved of these expenditures as reasonable and necessary, and it would seem such subsequent ratification is equivalent to a previous order. (*Frankenfield's Appeal,* 102 Pa. St. 589.) We are not prepared to hold that the rulings of the courts below in regard to these items were erroneous.

As has been heretofore stated, the step-mother of appellee, a few months after the death of her husband, removed to Washington, D. C., taking Benjamin T. Roodhouse, her infant son, with her. Appellee had the entire possession and control of the whole of the Greene county lands during the year 1880, and cultivated the cleared land thereon. He had told his step-mother that he would pay $2500 rent for that year, and early in the spring of 1881 he sent her two-thirds of that amount,—$1666.67. The widow's dower had not been either assigned or demanded, but he supposed that she was entitled to one-third of the rental value, his brother to one-third, and himself to the other third. Appellee was not appointed guardian of his brother until October 17, 1881, but appellant seeks herein to charge him with $1250,—one-half of said so-called rents,—on the ground he intruded upon the lands of his brother, and is to be held accountable as guardian *de son tort,* or *quasi* guardian. We think this claim can not prevail. The widow, of course, had no right to rent the land, either in her own right or on behalf of her infant son. Appellee did not assume to act as guardian until his appointment in the fall of 1881. Nor was he in possession in 1880 as a wrongdoer or mere intruder. He was co-tenant with his brother, and rightfully in possession. It has been held that an executor or

administrator in rightful possession of property can not be charged as *quasi* guardian, for he holds in a different capacity. *Bibb* v. *McKinley*, 9 Port. (Ala.) 636; *Menifee* v. *Ball*, 7 Ark. 520. The same principle is applicable here. Appellee was in possession as one of the heirs of his deceased ancestor, and in the capacity of co-parcener with his brother. He may be liable to account as co-parcener for the benefits derived by him from the use of the premises during the year 1880, but he can not be called to account therefor as guardian; nor would the securities upon his guardian's bond be liable therefor.

Appellee also occupied and used the undivided Greene county lands during the year 1881, and some months after his appointment as guardian remitted to Mrs. Roodhouse the share of his ward in the rents of that year. This payment was wholly unauthorized, and in utter disregard of his duty to his ward. It is evident that he acted in the utmost good faith, but ignorantly, and without any realization of the fact that his office of guardian imposed upon him any responsibility in respect to the management and preservation of the ward's estate. He was held by the court below accountable to his ward for the rent of said year, in the sum of $900, with six per cent interest, compounded annually. There was no contract for a larger rental than $900, and said court found, from the evidence, that $900 was a fair and reasonable rent, and we can not say it was manifest error so to find.

Early in 1882 the Greene county lands were partitioned between appellee and his ward, and appellee continued to use and occupy the portion allotted to his ward. As the report stands since the amendment which was required to be made by the circuit court, he is charged with $900 annual rent thereon for the years 1882, 1883, 1884, 1885, 1886 and 1887, respectively, with six per cent interest, compounded annually. There was no special contract for the payment of a stated rent. We have carefully examined all the testimony found in the record, and find no evidence placing the rental value at more

than $900, and fully concur in the conclusion reached by the
Appellate Court, that the action of the trial court in fixing the
rent at that sum was just and reasonable. There is evidence
of a conversation with L. E. Worcester, in which appellee
stated that he thought that he would be able to make $1000
a year out of the place; but we think that appellee should
not, under the circumstances in proof, be estopped by what
was then said. We think there was no error in refusing to
admit in evidence the letter that was written by Mr. Worcester
to the step-mother of appellee.

We are wholly unable to find in the record either vouchers
or evidence to support the two items of charge against the
ward, dated January 16, 1881, and January 16, 1882, re-
spectively, for $166.67 each. The letter written by appellee
himself, and narrative of past transactions was not competent
testimony against the ward or his present guardian.

We also think that the fifth assignment of error is well made.
It is, that the court erred in not charging the former guardian
with six per cent interest on the moneys in his hands from
January 19, 1888, to March 8, 1888. He seems to have been
relieved from the payment of such interest on the ground that
there is evidence showing that on the former date he tendered
to the county judge the moneys in his hands, and was told to
keep the money until a final order was made, and that it was
as safe in his hands as it was in the hands of the judge. We
think this tender should not have the effect of relieving ap-
pellee from the payment of the interest in question. The
judge of the county court was not authorized to receive the
money. Appellant had been duly appointed guardian, and
had given bond and qualified as such. Under the statute it
was the duty of appellee to deliver to his successor in office
the moneys in his custody or control belonging to the minor.
The tender should have been made to appellant. Besides this,
the tender made was of only $5718.27, at most, and the re-
statement made in the circuit court showed that $7676.47 was

·due, and even that did not reach the measure of the legal liability of appellee.

The order and decree made in the circuit court, and the judgment of the Appellate Court, are in all things affirmed, except in respect to the matter of interest from January 19, 1888, to March 8, 1888, and the two items above mentioned ·of $166.67 each, and in respect to said three matters said judgment and said order are reversed.   The cause is remanded to the circuit court, with directions to surcharge the account of ·appellee by requiring him to pay interest on the amount in his hands from January 19, 1888, to March 8, 1888, at the rate of six per cent per annum, and to deduct from the credits allowed appellee, said two above mentioned sums of $166.67 ·each, together with the six per cent interest, compounded, ·allowed thereon.

*Judgment reversed in part and in part affirmed.*