HEALD v. MICHIGAN TRUST CO.

1. TRUSTS—POWERS AND DUTIES OF TRUSTEES.

Although one must look to the trust instrument to determine the powers and duties of the trustee, not all of his powers and duties need be expressly embodied in the instrument creating the trust, since the law imposes certain duties upon such trustees and vests them with power to discharge the duties so imposed.

2. SAME—PRESERVATION OF TRUST PROPERTY.

Preservation of trust property is a duty imposed by law upon a trustee even though trust instrument may not impose such duty.

3. SAME—PAYMENT OF MORTGAGES.

Trustee who had broad powers under a trust, a family affair, *held*, to have authority to pay from trust funds the accruing installments of interest and principal of mortgage obligations incumbering trust property.

4. SAME—PRESERVATION OF PROPERTY—PAYMENT OF MORTGAGES.

A trustee is clothed with all power necessary to protect the trust estate and may discharge a prior incumbrance for the benefit of the estate and be entitled to reimbursement out of the proceeds of trust property.

5. SAME—PAYMENT OF MORTGAGES.

In determining whether trust funds could properly be used in making payments on mortgage indebtedness to which trust property was subject but not primarily liable, all the facts and circumstances surrounding creation of the trust should be considered.

6. SAME—PROTECTION OF TRUST PROPERTY—PAYMENT OF MORTGAGES.

Under family trust conferring broad powers of control upon trustee as to trust property subject to mortgages for payment of which trust estate was not liable but on which trustee was personally liable, payments in discharge of currently accruing installments thereon made from trust funds to mortgagee which knew of their source *held*, not recoverable from mort-

gagee in action at law by trustee and *cestuis que trustent,* since such funds were properly usuable in protection of trust property and trustee would have been entitled to reimbursement from trust estate upon subsequent accounting had he used his own funds in discharge of his primary liability on the mortgages.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J.   Submitted October 24, 1935.   (Docket No. 48, Calendar No. 38,530.)   Decided January 6, 1936.

Action by Anne R. Heald, guardian of the estate of Eleanor Heald, a minor, and others against the Michigan Trust Company, a Michigan corporation, for conversion and misappropriation of trust funds. Judgment for defendant.   Plaintiffs appeal.   Affirmed.

*Allaben & Wiarda,* for plaintiffs.

*Butterfield, Keeney & Amberg,* for defendant.

North, C. J.   Plaintiffs in this suit at law seek to recover judgment against the defendant trust company for an alleged unlawful conversion or misappropriation of trust funds under circumstances hereinafter detailed.   At the conclusion of all the testimony each party moved for a directed verdict. Thereupon the case was taken from the jury and decision rendered by the court as in a non-jury suit at law.   The trial judge held that plaintiffs were not entitled to recover.   Judgment was entered accordingly and plaintiffs have appealed.

There is very little, if any, material dispute as to the facts.   Henry T. Heald, one of the plaintiffs, in 1923 was associated in a corporate business with three other men—Messrs. Howe, Snow and Bertles.

The corporation was known as the Rindge Building and each of the four men possessed a one-fourth interest. On December 11, 1926, Mr. Heald and his three associates agreed to discontinue their business associations and to divide their respective property interests. At this time the corporation owned the following properties located in the business section of Grand Rapids: the Furniture Exchange building, the Shepard building, the Young & Chaffee building, and the Rindge building. Throughout this record the two buildings first above mentioned are referred to as the "north unit" of the Grand Rapids Garages; and the last mentioned building as the "south unit" of the Grand Rapids Garages. In February, 1923, the corporation executed a mortgage to the Michigan Trust Company, trustee, securing bonds issued in the aggregate of $350,000. This mortgage covered the north unit and the Young & Chaffee building. Also in February, 1923, the corporation gave a similar trust mortgage to the Michigan Trust Company securing an issue of bonds totaling $225,000. This mortgage covered the south unit. By the terms of the agreement of December 11, 1926, for the separation of the interest of Mr. Heald from that of his three associates it was arranged that all of the corporate property except the Young & Chaffee building should be deeded to Mr. Heald and that he personally should assume and agree to pay the outstanding mortgage indebtedness. The three associates of Mr. Heald were to have as their part of the corporate property the Young & Chaffee building, and Mr. Heald undertook and agreed to secure a release of this property from the mortgage incumbrance above noted and also from a second mortgage lien covering this parcel. Three-fourths of the outstanding bonds secured by

this second mortgage were held by Messrs. Howe, Snow and Bertles and the balance by plaintiff *cestuis que trustent.*

In the working out of the division of properties Mr. Heald on January 17, 1927, entered into a supplemental indenture or agreement with the Michigan Trust Company and the Rindge Building corporation. This supplemental agreement recited that Mr. Heald was taking over the Furniture Exchange building and the Shepard building and his agreement to procure a release of the Young & Chaffee building from the trust company's mortgage. The trust company agreed to such release on condition that the outstanding bonds secured by its first-mentioned trust mortgage should be reduced in amount from $320,000 to $250,000, and that improvements costing not less than $100,000 should be made in the north unit of the Grand Rapids Garages. There was compliance with these conditions whereupon the trust company executed to the Rindge Building corporation a release of its mortgage lien upon the Young & Chaffee building. The outstanding bonds secured by the second mortgage on the Young & Chaffee building were all surrendered to the Michigan Trust Company for cancellation and the mortgaged property released. After consummating his agreement with his three associates in the manner above indicated, Henry T. Heald took a deed from the Rindge Building corporation of the properties constituting the north unit and the south unit of the Grand Rapids Garages. In releasing the Young & Chaffee building from the two mortgages, as above noted, Mr. Heald had used, by causing them to be surrendered, securities held by him as trustee of his mother's estate and in trust for other members of his family. He also gave his note as trustee for $36,200, and his check as trustee for $3,800. He

thereupon consulted counsel as to the most desirable method of securing to these respective parties a corresponding interest in that portion of its property which the Rindge Building corporation had deeded to Mr. Heald. This resulted in a trust agreement being prepared and executed by Mr. Heald January 19, 1927. For the purpose of releasing her dower rights in the property, his wife, Anne R. Heald, joined with him in the execution of the declaration of trust which recited that it was "for the use and benefit of all persons holding beneficial interests in said trusts, the said beneficial interests to be evidenced by certificates of interest representing aliquot parts or shares of the entire beneficial interest in and to the said property;" being the north and south units of the Grand Rapids Garages. Thereupon 865 shares in the trust were issued to or for the parties other than Howe, Snow and Bertles, whose funds or securities had been used incident to releasing or reducing the incumbrances that theretofore existed against the properties of the Rindge Building corporation.

Mr. Heald was named as trustee in the declaration of trust and thereafter operated and managed the trust properties. From time to time, while the properties were being so operated, plaintiffs herein invested additional funds in the trust and certificates of interest were issued for such investments. By the time this suit was started (January, 1934) plaintiffs had investments in the trust, for which corresponding shares had been issued, totaling $217,700. These shares were held as follows: Eleanor Heald, a minor, 65; estate of Harriet Heald, deceased, 804; Anne R. Heald, 465; Alice Heald Jiranek, a minor, 97; Robert H. Jiranek, a minor, 10; Henry T. Heald, 735; under the declaration of trust, 1. Total, 2,177 shares. It should be noted that at the time the dec-

laration of trust was executed and the respective parties took their first interests therein, the trust property was subject to the unpaid portion of the trust mortgages to the Michigan Trust Company, trustee. The details of these mortgage liens were set forth in the declaration of trust; and at the outset they were entered in the accounts of the trust estate as liabilities. By reason of default in payments and foreclosure of the trust mortgages, all interest in the property theretofore held in the trust estate created by Henry T. Heald was terminated in 1934. In addition to acting as trustee under the trust mortgages, the defendant Michigan Trust Company was also acting as registrar and transfer agent incident to carrying on the affairs of the active trust created by Henry T. Heald in January, 1927. It countersigned all trust certificates. From time to time the trust company received from Henry T. Heald substantial sums of money which were applied in payment of bonds secured by the trust mortgages and of accrued interest. These payments by Henry T. Heald to the trust company were made in such form, especially in view of the information possessed by the agents of the trust company, as to plainly indicate the funds so used were trust funds in the hands of Henry T. Heald. Knowledge of this character is admitted by the trust company as to approximately $140,000 of the funds that passed through its hands.

There is much force to appellee's contention that portions of the funds used in making the creation of the Heald trust possible were not trust funds at all and also that as to certain phases of the transactions the funds did not pass through the hands of the defendant trust company. For example, Henry T. Heald's note, given as trustee, for $36,200, and

his check, also given as trustee, for $3,800, both hereinbefore mentioned, were payable to Howe, Snow & Bertles Realty Company. We forego noting other factual aspects of the record. Plaintiffs' contention is thus stated in their brief:

"It is the position of the plaintiffs in this case that the payment of the funds by Mr. Heald as trustee of the Henry T. Heald declaration of trust to the Michigan Trust Company was unlawful and amounted to a conversion by the trust company and that therefore the plaintiffs are entitled to recover the full amount of money paid to the trust company plus interest; that in any event the *cestuis que trustent* and especially the *cestuis que trustent* that were minors are entitled to recover their proportionate share of the funds so unlawfully paid to the Michigan Trust Company.

"Upon the execution of the declaration of trust the legal rights of the *cestuis que trustent* became definitely fixed. Under those rights the *cestuis que trustent* were entitled to have Mr. Heald pay this mortgage from his personal estate and his own personal income. He had no authority under the declaration of trust to pay trust funds on the mortgage as there was no power given him in the declaration of trust to do so."

We are first concerned with appellants' contention that the use which Henry T. Heald made of trust funds was in violation of the rights of the beneficiaries; and in this connection consideration must be given to what in fact and in law were his duties and powers as trustee under the Heald declaration of trust. Among other provisions in the declaration of trust, the trustee was given "sole management and control of the trust estate;" he was expressly empowered to pay for repairs and improvements on buildings out of the assets of the

trust estate; to collect rents and all other items due to the trust estate; to pay all obligations of the trust estate out of its assets; to borrow money for the benefit of the estate; and to retain such part of the net proceeds and assets of the trust estate as he might determine would be for its best interests. It is stressed in appellants' brief that an express declaration of trust must be strictly construed and a trustee cannot disregard limitations therein placed upon his powers (*Gibney* v. *Allen,* 156 Mich. 301); and that a trustee cannot make a charge against the trust estate unless expressly authorized. 26 R. C. L. p. 1316. In this connection appellants point out that there was no provision in the Heald declaration of trust whereby the trust estate was made liable for either the principal or interest accruing on the mortgages covering the trust property prior to the declaration of trust and that Henry T. Heald as grantee of the Rindge Building corporation had assumed and agreed to pay the mortgages. Hence, appellants contend, that payment of trust funds by the trustee on the trust mortgages constituted an unlawful conversion and misappropriation of such funds to which the defendant trust company was a party.

While it is true that one must look to the trust instrument to determine the powers and duties of the trustee, it cannot be said with precise accuracy that all the powers and duties of such trustee must be expressly embodied in the instrument creating the trust. Regardless of such provisions being expressed in a trust instrument, the law imposes certain duties upon trustees; and likewise vests such trustees with power to discharge the duties so imposed. For example the trust instrument might con-

tain no provision whereby the duty was imposed upon the trustee to preserve the trust property. Nonetheless the trustee is by law charged with this duty. *Warner Hardware Co.* v. *Shimon,* 186 Minn. 229 (242 N. W. 718).

As above noted, the real estate included in the Heald declaration of trust was subject to the mortgage incumbrances prior to the time title vested in the trust estate. By the trust instrument broad powers were conferred upon Henry T. Heald as trustee. It would be altogether too narrow a construction of the instrument to say that it did not confer upon him power to do any act which was reasonably necessary for the preservation and protection of the trust estate. In the discharge of this duty maturing bonds secured by the trust mortgages and accruing installments of interest were paid by the trustee with trust funds. Had he neglected or refused to meet the obligations of maturing bonds or accruing interest, foreclosure of the mortgage liens would have terminated all rights of the beneficiaries in the trust property. At the time payments of this character were being made by the trustee there was a valuable equity in this property, and a substantial income was being produced by the property. Forfeiture of the trust property by neglect or refusal of the trustee to meet accruing payments on the mortgage indebtedness would have been a failure to preserve the trust estate and a breach of duty on the part of the trustee.

"But it is equally true, that a trustee is clothed with all power necessary to protect the trust estate, and may discharge a prior incumbrance for the benefit of the estate; and will be entitled to be reimbursed out of the proceeds of the trust property. * * * If this were not the law, a trustee could not

protect the trust property for the benefit of the *cestui que trust.*" *Crutchfield* v. *Haynes,* 14 Ala. 49.

"If a trustee finds that the trust property is mortgaged, his duty to preserve the trust property imposes upon him the obligation of paying the interest on the mortgage debt as it becomes due and the principal if it becomes due during the life of the trust." 3 Bogert, Trusts and Trustees (1st Ed.), p. 1934.

See, also, *Harrison* v. *Mock,* 16 Ala. 616; *Crutchfield* v. *Haynes, supra; Fischbeck* v. *Gross,* 112 Ill. 208; *Rothwell* v. *Rothwell,* 283 Mass. 563 (186 N. E. 662); *Morton's Case,* 74 N. J. Eq. 797 (70 Atl. 680); and as to trustee's duty to pay taxes, *City of Detroit* v. *Lewis,* 109 Mich. 155 (32 L. R. A. 439).

We are mindful of appellants' contention that, since Henry T. Heald personally assumed the mortgage obligations, it was primarily his duty to pay the indebtedness from his own funds and not lawful for him as trustee to make such payment from trust funds; and therefore appellants assert the principles of law hereinbefore noted are not applicable to the instant case. In a strict legal sense it may be said that the mortgage indebtedness was not an obligation for which the trust estate assumed direct liability. It is also true that Henry T. Heald had become directly liable by assuming the obligations. But in determining whether trust funds could properly be used in making payments on the mortgage indebtedness, all the facts and circumstances surrounding the creation of the trust should be taken into consideration. In the first place the Heald trust was a family affair. While there is some slight difference in the dates upon which the various documents were executed, nonetheless each of the steps taken in separating the property interests of Henry T. Heald and his former business associates and in

the creation of the Heald declaration of trust are for practical purposes and should be held to be one transaction. When Henry T. Heald took the conveyance of the properties and assumed and agreed to pay the outstanding mortgage incumbrances he was acting incident to the ultimate consummation of the declaration of trust. At least it is to be presumed he at all times planned to vest a proportionate interest in the acquired properties in those whose funds were used in securing the properties. When he created the trust estate he set forth in the declaration of trust the bond mortgage incumbrances to which the real properties were then subject. As above stated, at the outset these incumbrances were entered in the accounts of the trust estate as liabilities. Nowhere in the declaration of trust was it provided that the donor was to satisfy these incumbrances from his own funds. On the contrary in his declaration of trust Mr. Heald specifically set forth that the trust property was made up of the incumbered real estate and certain listed personal property, and "that the said premises and personal property were so conveyed to me, and that I now hold and will continue to hold the same in trust only, for the use and benefit of all persons holding beneficial interests in said trust." Obviously whatever was paid on the incumbrances inured to the direct benefit of those beneficially interested in the trust. It might well be held that by the express terms of the declaration of trust the trustee was authorized to make such an investment; for the trust agreement not only covered the property described therein but also "all other property which may be later acquired by the trustee for the benefit of the trust and the beneficiaries thereof." And the instrument expressly empowered the trustee "to pay all

obligations of the trust estate out of the assets of the trust estate.'' Evidently in an abundance of precaution, Henry T. Heald specifically provided in the trust instrument:

''That this declaration of trust does not cover and is not intended to cover any property belonging or hereafter to belong to myself individually * * * excepting as hereinabove expressly described, and as shall hereafter be added to the said trust and/or trust fund by express entry upon the books and records of said trust.''

If, as appellants assert he should have done, Henry T. Heald had paid the mortgage indebtedness out of his own funds, under plaintiffs' theory, he would have thereby added *pro tanto* to the trust estate, and the trust would have benefited at the expense of Henry T. Heald in direct contradiction of the express terms of the declaration of trust last above quoted. It is true, as asserted by appellants, that the mortgage incumbrances were not literally obligations of the trust estate; but in a broader sense they were obligations which had to be paid by or in behalf of the trust estate in order that its property rights might be preserved. Under the circumstances of this case, we think if Henry T. Heald had paid the mortgage indebtedness in whole or in part that on a subsequent accounting incident to his trust he would have been entitled to be credited with the amount so paid. *Pratt* v. *Thornton,* 28 Me. 355 (48 Am. Dec. 492); *Cheney* v. *Roodhouse,* 135 Ill. 257 (25 N. E. 1019); *Chaffin* v. *Hull* (C. C.), 49 Fed. 524; affirmed *Hull* v. *Chaffin,* 4 C. C. A. 414 (54 Fed. 437). This is true because it is obvious that the trust property consisted only of the equities in the incumbered parcels, and that the plain intent and understanding was that payment of the mortgage

indebtedness was to be made from the income of the trust estate, not by Henry T. Heald from his personal funds.

In view of the circumstances out of which this trust arose and the purpose for which it was created, it cannot be said that use of trust funds by the trustee in making payments on the mortgage liens constituted unlawful conversion or misappropriation of the funds so used. It follows that the defendant trust company is not liable to plaintiffs for trust funds which it received from Henry T. Heald in payment of principal or interest on the trust mortgages.

There are obvious reasons not hereinbefore noted why Henry T. Heald should not be permitted to recover from the defendant trust company. Some of such reasons would also apply to other adult plaintiffs asserting rights in this suit. However, we have preferred to plant decision upon the broader ground which is decisive of the rights of all plaintiffs, including *cestuis que trustent*. We forego discussion of other defenses urged, including estoppel, statute of limitations and laches. Judgment entered in the circuit court is affirmed.

FEAD, WIEST, BUTZEL, BUSHNELL, EDWARD M. SHARPE, POTTER, and TOY, JJ., concurred.