# WARNER HARDWARE COMPANY v. EDWARD J. SHIMON AND ANOTHER.[1]

May 27, 1932.

No. 28,860.

[1]Reported in 242 N. W. 718.

*James C. Melville,* for appellant.
*O'Malley & O'Malley,* for respondent Edward J. Shimon.
*Beldin H. Loftsgaarden,* for respondent Carl J. Gelin.

HOLT, J.

Plaintiff appeals from the order denying its motion for a new trial after findings were filed in favor of defendants.

The only assignment of error is "that the findings of the court are not sustained by the evidence and are contrary to law." There are 11 distinct findings of fact and six separate conclusions of law, and it is obvious that our rule as to assignments of error has not been observed. However, after a short outline of the situation which occasioned the trust involved, we shall endeavor to dispose of the questions appellant presents in its brief, which are only questions of law.

Previous to 1927 the Beard Realty Company owned encumbered lots in St. Paul whereon it constructed two apartment buildings known as 1434 and 1440 Grand avenue. Twenty-five persons, partnerships, or corporations had furnished labor and materials in the construction of the buildings, for which they had not been paid. These had filed or threatened to file mechanics' liens. Evidently the largest loan obtainable was insufficient to pay the lien claimants, the prior encumbrances, and finish and equip the apartments. The Beard Realty Company negotiated a mortgage for $28,000 upon each apartment, conveyed the properties to defendant Shimon, one of the lien claimants, in trust for himself and the other lien claimants. A trust agreement was executed by Shimon and the other lien claimants, and the mortgagee holding the two $28,000 mortgages paid off prior encumbrances, and out of what remained of the loan the claimants received 28 per cent of their claims and gave satisfactions or releases of their liens. The apartments were not quite completed and furnished. The equipment such as gas stoves,

refrigerators, and furnishings had been purchased on the instalment plan and but partly paid for. The Beard Realty Company had the right to pay the lien claimants, the beneficiaries of the trust, at any time prior to January 1, 1933, and obtain a reconveyance from the trustee. This virtually meant that the trustee could not dispose of the trust property prior to that date unless the Beard company consented by joining in such disposition.

It soon developed that the rents of the apartments did not meet the obligations such as taxes, interest on the mortgages, and the instalments on the equipment as they accrued. Money had to be borrowed from the bank to pay the demands against the property, and the trustee and five or six of the beneficiaries holding the larger lien claims had to guarantee the repayment of the money borrowed, until this amounted to more than $6,000. The beneficiaries came to the conclusion that the only way out of the dilemma was to purchase the interest of the Beard Realty Company, thus vesting absolute title and possession in the trustee. This was done, with the consent of all interested, for the sum of $2,000. As soon as the trustee obtained the absolute title, he and the beneficiaries endeavored to dispose of the property. Two offers were submitted to a meeting held by the beneficiaries. The one was a sale for cash which would net the beneficiaries about 22 per cent of their claims, and the other was a trade with defendant Gelin whereby he was to pay about $7,000 in cash and convey to the trustee nine encumbered properties, in exchange for a deed to 1434 and 1440 Grand avenue subject to the two mortgages. The cash offer was rejected, and on motion of plaintiff's representative at the meeting a committee of four was "empowered to proceed with a sale at what they considered a legitimate deal." A majority of this committee examined the Gelin properties, and the deal was afterwards consummated with Gelin. About a year after the exchange with Gelin was closed this action was brought by plaintiff, one of the beneficiaries, to set aside the conveyance to Gelin, to remove defendant Shimon as trustee, and for an accounting.

The court found that Shimon held the title to 1434 and 1440 Grand avenue, St. Paul, in trust for plaintiff and the other beneficiaries when he conveyed it to Gelin. We do not think this finding is in any manner challenged. Nor is there anything in the record impugning the finding that Gelin in good faith made the trade. He and his attorney were at the meeting of the beneficiaries when the offer to trade was considered. There is nothing in the evidence casting any doubt upon the correctness of the finding that at all times since the inception of the trust the trustee "has kept a complete record of all moneys and properties received and disbursed by him, and has fully accounted for same. * * * That all moneys and properties received by the trustee have been used for the benefit of the beneficiaries under the trust agreement and fully accounted for." Nor, in view of the motion made by plaintiff's representative at a meeting of the beneficiaries, as above noted, can plaintiff assert that the court erred when it found that the trustee was as a matter of fact authorized to make the deal with Gelin. The evidence justified the court in concluding that a majority of the committee named in the motion conducted and approved the disposition made of 1434 and 1440 Grand avenue.

Two of the four propositions advanced by plaintiff in its brief are not open to it on this appeal. These two are that the exchange was made in bad faith against the wishes of the beneficiaries, and that the trustee had no power to compromise any claim of a beneficiary without the consent of all. As to the first the finding is to the contrary; and as to neither was the court requested to find specifically. True, plaintiff proposed to amend the findings made by substituting therefor entire findings of fact and conclusions of law drawn by it; but this is not the proper way to obtain a finding upon specific issues. Nor does the general assignment that the findings are not sustained by the evidence challenge any one of the several findings made by the court. Johnson v. Madson, 171 Minn. 499, 214 N. W. 477.

The first of the two legal propositions which appellant urges and which it is in position to present is that, even though the trustee

acquired all the interest and title of the Beard Realty Company to 1434 and 1440 Grand avenue, he had no more power than he originally had to sell (not exchange) that property except for an amount which would pay the claim of the beneficiaries in full. The second is that the trustee had no power without the consent of all the beneficiaries to exchange the trust property. The two propositions may be considered together.

The provisions of the trust agreement or declaration of trust executed by all the beneficiaries, including Shimon, also a beneficiary, and by the trustee, Shimon, relating to the powers and duties of the trustee, read:

"Now, Therefore, the undersigned, Edward J. Shimon, hereby declares that he holds and will hold said premises, together with all the moneys derived from any sale, rents, lease, exercise of eminent domain, or any other disposition thereof, or of any part thereof, and any cash or other property or thing of value acquired or to be acquired by him in connection with the property itself or deposit with or payment to him by the said Beard Realty Company, or those claiming under it, in trust and manage and dispose of the same for the benefit of persons, firms and corporations as hereinafter provided."

In article III of the instrument it is provided that if Beard Realty Company has not by the first of January, 1933, paid the trustee sufficient to satisfy all the claims of the beneficiaries in full and all expenses, "the trustee shall have the full power, right and authority to grant, bargain, sell and convey said premises, or any part thereof, subject to the amount remaining unpaid on the two mortgages of The Matteson Company, Inc. hereinbefore referred to, or such other mortgage, or mortgages as may exist against said premises pursuant to the provision therefor as hereinafter set forth, for such price as to him shall seem just and proper."

No other provision in the agreement appears pertinent to the proposition before us. Plaintiff concedes that through the second conveyance from the Beard Realty Company the trustee acquired the absolute title to 1434 and 1440 Grand avenue, holding such title

for the sole use of the beneficiaries. By obtaining the interest and title of the Beard Realty Company, the restriction to. a disposition of the property prior to January 1, 1933, was removed. Surely after absolute title was obtained the trustee had the power under the provisions above quoted at once to dispose of the property. It is perfectly obvious from the situation of the parties that the trust was not created for the purpose of keeping the property or conserving it for the future use of someone; but was for the purpose of so selling or disposing thereof that the beneficiaries might be able to realize as speedily as possible the largest amount obtainable upon their claims. A sale thereof cannot in any view be considered to be in contravention of the trust, prohibited by G. S. 1923 (2 Mason, 1927) § 8101. Nor do we think an exchange for other properties and cash could be considered in contravention of the trust under the situation which confronted the trustee and the beneficiaries. There is found no provision in the trust agreement making the trustee's power to sell or dispose of the trust property dependent upon the consent of the beneficiaries or any of them.

The trust agreement above quoted implies that the property might be disposed of otherwise than by a cash sale, for in referring to moneys coming into the hands of the trustee from a sale the phrase is added, "or any other disposition thereof." An exchange for cash and other property may well be embraced in that phrase. And again, the trustee is to hold "any cash or other property or thing of value acquired or to be acquired by him in connection with the property itself," for the use of the beneficiaries, is language which clearly includes the property conveyed by Gelin in exchange for 1434 and 1440 Grand avenue. It is true that a trustee empowered to sell the real property held in trust, as a general rule, may neither exchange it for other real estate nor mortgage it. 49 C. P. p. 1271, §§ 71 and 74. But the powers conferred upon a trustee under a trust agreement should be measured not only by the language employed but by the purpose and object for which the trust was created. Here the trust was prompted by the desperate situation in which the Beard Realty Company and its creditors, the bene-

ficiaries herein, found themselves; and, when it appeared that the trust must wholly fail of its purpose unless the Beard Realty Company could be eliminated so that a speedy disposition could be made of the trust property, that condition should be kept in mind when considering the implied powers granted the trustee by the trust agreement.

The decisions cited by plaintiff in support of its contention that power to sell does not include power to exchange concern trusts of widely different purposes from the one here involved so that they have little bearing. They are Holsapple v. Schrontz, 65 Ind. App. 390, 117 N. E. 547; Taylor v. Phillips, 147 Ga. 761, 95 S. E. 289; Trimboli v. Kinkel, 226 N. Y. 147, 123 N. E. 205, 5 A. L. R. 1385; Brace v. Van Eps, 12 S. D. 191, 80 N. W. 197. The following authorities in a measure sustain the view we take of the power conferred upon the trustee by the instrument here in question. 2 Perry, Trusts & Trustees (7 ed.) § 766; Dickson v. New York Biscuit Co. 211 Ill. 468, 71 N. E. 1058; Waterman v. Baldwin, 68 Iowa, 255, 26 N. W. 435; Loebenthal v. Raleigh, 36 N. J. Eq. 169; In re Gray's Estate, 196 Wis. 383, 220 N. W. 175.

There is another legal ground upon which the court properly decided in favor of defendants. That is estoppel. The court found that at a meeting of the beneficiaries held in February, 1929, a resolution was passed to borrow money to purchase the rights of the Beard Realty Company so as to eliminate the 1933 limitation; that this was done; and that at said "meeting one Collins duly representing the plaintiff made a motion in the form of a resolution, which was carried, that the property be forthwith sold on any legitimate deal, and pursuant thereto negotiations were had between the defendant Edward J. Shimon, trustee, and the defendant Carl J. Gelin for the purpose of making a deal on said premises"; that the contract between the two was made June 21, 1929; that on July 15, 1929, the deeds were exchanged; and that on October 5, 1929, these defendants fully adjusted and completely settled all matters according to the terms of the contract of June 21, 1929. This action was not begun until September 4, 1930.

From these facts the court as a conclusion of law held that plaintiff was estopped. Even though Collins did testify that he did not know of the deal at the time it was made, the court was not bound to find that plaintiff was in ignorance thereof. Meetings of the beneficiaries were called and held subsequent to February, 1929. All the beneficiaries were very much interested in closing the trust and getting their claims off their books of account. There were efforts by the trustee to have the beneficiaries accept properties received in exchange and adjust or settle their claims in the transaction, and the court could well infer that plaintiff knew what had been done months before this suit was brought.

The order is affirmed.

STONE, J. (concurring).

I concur in the result upon the ground that the finding of estoppel is sustained by the evidence. If that be a correct view, it is unnecessary to consider the other questions dealt with.

