CLARA M. SWORD v. MARQUETTE NATIONAL BANK OF MINNEAPOLIS AND OTHERS.

91 N. W. (2d) 75.

June 13, 1958—No. 37,485.

*Marshall S. Snyder,* for appellant.

*Thompson, Hessian, Fletcher & McKasy,* for respondents Rosendahl.

MAGNEY, COMMISSIONER.

Plaintiff, Clara M. Sword, sought to have certain deeds of conveyance declared null and void. Defendants prevailed, and judgment was entered. Plaintiff appeals from the judgment.

Plaintiff is the daughter of one Frank Kiesel. In 1947, as special guardian of Kiesel, she commenced an action against Amalie Rosendahl, one of the defendants here. Pursuant to a stipulation between plaintiff and Kiesel, the Probate Court of Hennepin County rescinded its order appointing plaintiff special guardian and decreed that Kiesel, then 85 years of age, was mentally competent. The action was dismissed. In the stipulation it was also agreed that Kiesel would enter into a living trust with defendant Marquette National Bank of Minneapolis and would convey to it his property, for his own use absolutely, for his care and protection for the remainder of his life, to be disposed of pursuant to his wishes upon his death. On April 15, 1947, Kiesel, by written instrument, created an "irrevocable living trust," under which he transferred the sum of $15,000 and two parcels of land to Marquette National Bank of Minneapolis, as trustee, among other things, to hold, manage, invest and reinvest the same; to pay to Kiesel, the donor, from the net income and principal thereof the sum of $200 per month and additional sums in case of emergency, or illness, or other specific pur-

poses; and, upon the death of Kiesel, to dispose of the trust fund, including any accumulated income thereon, as follows: (1) $1,000 to defendant Amalie Rosendahl; (2) the real estate to plaintiff; and the remainder to six persons, including plaintiff, share and share alike.

On or about October 1952, the $15,000 had been exhausted by payments made to Kiesel, and, in order to be able to make further $200 payments, the bank, on or about October 7, 1952, as to part, and May 20, 1953, as to the remainder, conveyed the real estate to the Rosendahls as joint tenants for the sum of $2,000, which the Rosendahls paid to the bank. No question is raised as to the sufficiency of the consideration. Prior to Kiesel's death and as of September 18, 1953, all of the trust assets, including the proceeds of the sale of the real estate, were exhausted, having been paid by the bank, as trustee, to Kiesel or on his behalf in accordance with the directions contained in the trust instrument. Kiesel died on October 23, 1954, at the age of 93 years.

Plaintiff seeks to set aside and cancel the conveyances to the Rosendahls by the bank as trustee. She claims that the bank had no power to convey, since no specific power was written into the trust instrument. She contends that at Kiesel's death the real estate was properly a part of the trust estate and that, under the terms of the trust instrument, she is now entitled to a conveyance of the real estate to herself.

The question presented is whether the trustee here had the implied power to sell the real estate in question.

Under the terms of this express trust, the bank trustee was to hold, manage, invest, and reinvest the corpus of the trust. It was to pay from the net income and principal the sum of $200 per month to the donor and such further sums as in its discretion were necessary in case of emergencies and other specified situations.

A trustee derives his authority from the instrument creating the trust, and each case must be decided in the light of the provisions of the particular trust instrument. May v. Ackerman, 235 Minn. 273, 51 N. W. (2d) 87.

In In re Trusteeship Under Last Will of Menzel, 247 Minn. 559, 77 N. W. (2d) 833, 834, where, in accordance with the terms of a will, the trustee was given all rights and powers of dominion and ownership

of the trust estate and was given the power to "invest, re-invest" and "alter or change" the property comprising the trust, the court stated that "such will is interpreted to confer implied authority of sale and includes the lesser grant of authority to lease."

Restatement, Trusts, § 190, states:

"The trustee can properly sell trust property if

"(a) a power of sale is conferred in specific words, or

"(b) such sale is necessary or appropriate to enable the trustee to carry out the purposes of the trust, unless such sale is forbidden in specific words by the terms of the trust or it appears from the terms of the trust that the property was to be retained in specie in the trust."

*Comment b* under the above section further states:

"The trustee can properly sell trust property if it appears from the language used in the trust instrument that a power of sale was intended to be conferred upon him, although it is not conferred in specific words. Thus, an authorization or direction to the trustee to 'invest and manage,' or to 'invest and reinvest,' or to 'dispose of' the trust property, may confer a power of sale both of real and personal property."

*Comment c* continues:

"An authorization or direction to the trustee to pay to the beneficiary certain sums of money out of the principal of the trust estate confers a power of sale so far as such sale is necessary to raise the money to make the payments."

In our trust instrument the trustee was invested with authority "To hold, manage, invest and reinvest." Clearly, it had the implied authority to sell.

It was said in Warner Hdwe. Co. v. Shimon, 186 Minn. 229, 234, 242 N. W. 718, 720:

"* * * It is perfectly obvious from the situation of the parties that the trust was not created for the purpose of keeping the property or conserving it for the future use of someone; * * *."

So it is perfectly obvious here, in view of the purpose and object for which the trust was created and the language employed, that the trustee

had the implied power to dispose of the real estate and use the proceeds of such sale in the payment of $200 per month required under the trust instrument as living expenses for the aged donor and settlor. By selling, the beneficiary was provided for. The trust was not created for the purpose of keeping the property or conserving it for plaintiff. To the extent of the money received from the sale of the real estate, the trust would have failed of its purpose if the trustee be found to be lacking in authority to sell. The trust was created for Kiesel's "own use absolutely, for his care and protection for the remainder of this transitory life," in the language of the stipulation hereinbefore referred to. There is nothing in the trust instrument indicating any intention on the part of Kiesel that the parcels of real estate should be retained by the trustee in order that plaintiff might receive them on Kiesel's death.

The court was correct in its disposition of the case.

Judgment affirmed.