360 N.W.2d 626 (1985)
In the Matter of the Trust Created Under the Maurice J. FLORANCE, Jr. Trust Agreement dated January 14, 1954.
Patricia FLORANCE and Frank Gaertner, Appellants,
v.
MERCANTILE NATIONAL BANK AT DALLAS, trustee, Respondent, and
Florence A. Florance, Respondent.
No. C0-83-1292.
Supreme Court of Minnesota.
January 11, 1985.
*627 John A. Forrest, David A. Orenstein, Minneapolis, for appellants.
Ford W. Crouch, Larry R. Henneman, Bruce Krueger, Minneapolis, for respondent.
Heard, considered and decided by the court en banc.

OPINION
SIMONETT, Justice.
We granted a petition for further review from the decision of the Court of Appeals holding valid an attempt by a settlor to amend his trust by a handwritten letter and remanding the case to the Minnesota trial court to ascertain the meaning of the letter amendment. See Matter of Florance, 343 N.W.2d 297 (Minn.Ct.App.1984). We affirm the Court of Appeals' holding to the extent it has ruled on certain issues of validity of the letter amendment, but we remand to the trial court to determine, under forum non conveniens, whether trial of the remaining issues should be in Minnesota or Texas.
In 1954 Maurice J. Florance, Jr., created an inter vivos trust for some oil and natural gas wells located in New Mexico. Although Mr. Florance was then a Minnesota resident (but in military service at the time), he provided in the trust that "the situs for administration of all trusts herein provided for and for purposes of interpretation of this trust agreement shall be Dallas County, Texas, and so far as may be permitted by law the laws of the State of Texas shall control." Subsequently, Mr. Florance married and lived in Minnesota with his wife and five children. The trust property increased substantially over the *628 years. Under the trust instrument, Mr. Florance reserved the right to amend or revoke the trust, and over the years six amendments were made. For any amendment to the trust to be valid, the trust instrument required that the amendment be executed with the same formalities as the original trust agreement and that, unless waived by the trustee, a written notice of intent to amend the trust had to be filed with the trustee 1 year before the amendment could become effective.
On February 15, 1980, Mr. Florance, then in failing health, apparently attempted to amend his trust once more. He sent a handwritten letter to the trustee, the Mercantile National Bank at Dallas, the first three paragraphs reading 
I wish to make the following changes and additions to my Trust No. 1.
In case of my death or incapacitation my wife who from this date will be a joint tenant, shall have the rights of that status.
I appoint my wife, Patricia and Dr. Frank M. Gaertner as my trustees with Dr. Gaertner having the final say in any difference of opinion on Trust matters.
Upon receipt of this letter, the trustee, unsure of its meaning, did not waive the 1-year notice period for a trust amendment to become effective. Ten months later, on December 6, 1980, Mr. Florance died. Two threshold questions immediately arose: Did the settlor's death before the 1-year notice period had expired make the letter amendment ineffective? Did the letter lack the requisite formalities of execution to make it valid?
If the letter amendment would survive the two threshold objections to its validity, the next question would be what the language of the amendment meant. Under the original trust instrument, upon Mr. Florance's death, his wife Patricia was to receive sums from principal and income for her maintenance and support so long as she did not remarry. Patricia was not, however, to receive any part of the trust corpus, which was instead divided into separate trusts for the children and grandchildren. Under the purported letter amendment, however, the widow claims she is entitled to one-half the trust property outright. The children and grandchildren have no objection to this proposed distribution and have filed a formal declaration so stating.
It was necessary, therefore, for the trustees to have a court adjudication of the letter amendment. Consequently, in September 1981 Dr. Gaertner and Patricia Florance filed a "Petition for an Order Construing Trust Instrument, Directing Distribution, and Other Relief," with the Hennepin County, Minnesota, District Court. After the petition was filed, the petitioners acceded to the request of the Dallas bank to seek instead a judicial determination in Texas. On December 11, 1981, the bank filed a declaratory judgment action in Texas. The Minnesota proceeding was indefinitely stayed, and all parties proceeded with the Texas action. At this time, the settlor's mother, Florence, a remote contingent beneficiary of the trust, made her appearance in the Texas action, objected to the family's interpretation of the letter amendment, and demanded, as apparently she could under Texas law, a jury trial. Patricia Florance countered with a motion for summary judgment. On December 27, 1982, the Texas trial court granted summary judgment adjudging that the letter amendment was valid and construing the terms of the letter to give Patricia one-half of the trust property outright. The settlor's mother, however, moved for a "new trial," which was granted on March 31, 1983, and trial was set for December 5, 1983.
At this point, Patricia and Dr. Gaertner decided to reactivate their Minnesota proceedings. A hearing was held in Hennepin County District Court on June 29, 1983. The settlor's mother and the Dallas bank objected on the grounds that the Minnesota court lacked in rem jurisdiction and, in any event, Texas was the appropriate forum for trial. The district court proceeded, however, and on August 4, 1983, ruled that the purported letter *629 amendment was invalid because the settlor died before the 1-year notice period had passed. This being so, Patricia and Dr. Gaertner, as Minnesota residents, were not trustees and, therefore, the trial court held that Minnesota was without in rem jurisdiction.[1]
Patricia and Dr. Gaertner appealed this decision to the Minnesota Court of Appeals. The appellate court held, as had the trial court, that the letter amendment met necessary formalities for execution, but on the second issue reversed the trial court and held that the settlor's death before the 1-year notice period had expired did not prevent the trust amendment from being effective. Consequently, the Court of Appeals held that Minnesota had in rem jurisdiction of the trust; it further ruled that Minnesota was the convenient forum for the litigation, and remanded to the Hennepin County District Court for further proceedings. We granted the petition of Florence Florance, the settlor's mother, for further review.

I.
First of all, we affirm the Court of Appeals rulings that the letter amendment satisfies the formalities of execution required by the trust instrument and that Mr. Florance's death before the 1-year period expired did not prevent the trust amendment from becoming effective. We agree with the Court of Appeals' reasoning as set out in its opinion, and there is no need to repeat it here. See Matter of Florance, 343 N.W.2d 297 (Minn.Ct.App.1984).
Mr. Florance's mother urges us, nevertheless, to reverse and dismiss the Minnesota proceedings on the grounds of forum non conveniens, thereby letting Texas decide all issues in the action pending there. She argues that Texas acquired in rem jurisdiction first and so, as a matter of comity, Texas should have been allowed to proceed and, further, that Texas is the convenient forum to try this case. While there is merit to this argument, we are not inclined at this late date to undo what has been done on the grounds it might have been done more appropriately in Texas. Keeping in mind it is now 4 years since the settlor's death, it seems to us that, in terms of convenience of witnesses and efficiency in deciding the issues that were treated by the district court, Minnesota has provided an appropriate forum. To the extent the Minnesota Court of Appeals has so far decided issues of the validity of the letter amendment, we hold that neither comity nor forum non conveniens requires reversal.

II.
Since two of the three trustees, Patricia and Dr. Gaertner, reside here, Minnesota has concurrent in rem jurisdiction with Texas over the trust. We would expect the Texas courts to give full faith and credit to the Minnesota adjudication that has been made on the validity of the letter amendment. The question that gives us pause, however, is whether Minnesota should continue to exercise jurisdiction over the remaining issues to be litigated or whether the case at this point should be returned to Texas. "Even though a court has jurisdiction it may decline to exercise it on the ground that the exercise of jurisdiction *630 should be left to another court." 5A Scott, The Law of Trusts § 569 (1967 & Supp. 1984); 1 D. McFarland and W. Keppel, Minnesota Civil Practice § 727 (1979).
The trial court, in ruling that the letter amendment was invalid because of the settlor's untimely death, never reached the issues of what the language in the letter might mean. These issues form a separate, second stage of litigation remaining to be tried. Moreover, although the Court of Appeals reached the forum non conveniens issue, the trial court never expressly ruled on that issue.
The letter amendment, handwritten by Patricia Florance and signed by her husband, is unclear as to what Patricia's property interest might be. Other language in the letter raises questions about the relative powers and relationship of the three trustees, various allowances to the beneficiaries and other matters of trust administration. An issue has also been raised that the language is so indefinite and uncertain that the letter amendment is invalid, in whole or in part. In any event, all these issues remain for trial, and the question is where should the trial be.
The doctrine of forum non conveniens permits a court, in the exercise of its discretion, to decline jurisdiction when it fairly appears from the practicalities of trial that it is more appropriate to try the case in another forum. Hague v. Allstate Insurance Co., 289 N.W.2d 43, 45 (Minn. 1978), aff'd, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521, reh'g denied, 450 U.S. 971, 101 S.Ct. 1494, 67 L.Ed.2d 623 (1981). To be considered are all the "practical problems that make trial of a case easy, expeditious and inexpensive." Id. at 46, quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). In Matter of Cary, 313 N.W.2d 625 (Minn. 1981), we affirmed the Minnesota district court's release of its in rem jurisdiction over a trust so that various accounting matters could be tried in the Superior Court of Washington, D.C., which had concurrent jurisdiction. We noted the trust assets and records were in Washington where the trust had been administered for about 15 years. Another factor to be considered is the appropriateness of trying the case "in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." Gulf Oil Corp., 330 U.S. at 509, 67 S.Ct. at 843. See also Koster v. Lumbermen's Mutual Casualty Co., 330 U.S. 518, 521, 67 S.Ct. 828, 830, 91 L.Ed. 1067 (1947).[2]
The Court of Appeals concluded that Minnesota was the proper forum because it provides "the most economical, logical and efficient method for construing the trust amendment, supervising the administration of the trust, and concluding the estate proceeding." 343 N.W.2d at 304. The Court of Appeals pointed out that all the beneficiaries and two of the trustees reside in Minnesota; that decedent's probate estate is being administered in Minnesota; that Texas is only the location of the custodial, corporate trustee; and that the trust property itself is in neither Texas nor Minnesota. Moreover, the Court of Appeals felt that the Minnesota courts were "closer" to resolving the litigation and that it would be more advantageous to proceed in Minnesota under the expedited procedures of Minn. Stat. § 501.35 (1982), than under the pending Texas declaratory judgment action.
*631 In addition to these factors, admittedly persuasive, we think there are two countervailing factors that have not been considered that need to be. First, Mr. Florance expressly provided in his trust that "the situs for administration of all trusts herein provided for and for purposes of interpretation of this trust agreement shall be Dallas County, Texas." This instruction is not to be lightly disregarded. See Doerr v. Warner, 247 Minn. 98, 107, 76 N.W.2d 505, 513 (1956) (one factor in Minnesota retaining jurisdiction over a trust was that the trust instrument provided that the Minnesota court was to appoint successor trustees and that Minnesota law was to govern the trustees). Secondly, the trust instrument provides that Texas law controls, and it appears there may be serious, complex issues of Texas law involved in resolution of the remaining litigation.
The letter amendment, it will be recalled, says, "In case of my death or incapacitation my wife who from this date will be a joint tenant, shall have the rights of that status." In oral argument, counsel for one of the respondents stated that this language created "some sort of interest" in Patricia Florance. From our reading of the legal papers filed in the Texas proceedings, it appears that what interest Patricia Florance receives under the letter amendment, or if she receives any interest at all, may involve close questions of Texas property law. Patricia claims the language of the letter amendment means she is entitled to half the trust property, either because under Texas law she is an equal tenant in common upon the settlor's death, or because, as a surviving joint tenant, she is entitled under Texas law to the entire trust property. Apparently, because of this latter possibility, Patricia has filed a disclaimer, disclaiming any interest in the trust other than for one-half of the trust property. (The meaning of this disclaimer is also being litigated.) The parties also appear to disagree on the nature of the settlor's interest in the trust property, as well as on the requirements for creation of a joint tenancy interest under Texas law. Finally, it appears that Texas has recently enacted a new trust code, which may or may not have any applicability. See Tex.Prop.Code Ann. §§ 111.001-115.017 (Vernon Supp. 1983).
Putting aside these questions of Texas law and the significance of the settlor's direction that the situs for the administration of the trust be in Texas, it would seem at this late date that it cannot be said that Minnesota would not be an appropriate forum to try the second stage of this litigation. The settlor's mother, who herself lives in Minnesota, can point to no inconvenience in trying the case here. Nor does the bank point to any trial inconvenience here. Most importantly, it is now 4 years since the settlor's death and it is time this litigation be put to rest, although the delay appears not to be attributable so much to any party but to the vicissitudes of litigation  for Patricia Florance and Dr. Gaertner were met with adverse rulings in both trial courts, first in Texas and then in Minnesota. At this time, however, it may be that resolution of the remaining litigation can be accomplished more expeditiously in Minnesota than Texas.
But the factor that troubles us, and the one we find imponderable on this record, is the extent of the burden that would be imposed on a Minnesota court in applying Texas law and the difficulty of administering a trust with a Texas situs. It appears to us there may be difficult, novel questions of Texas law involved. The Minnesota trustees assert this is not so. The precise legal issues are not, however, sufficiently delineated or explored on this record for us to reach any conclusion. Nor are these matters discussed by the Court of Appeals. As we said in Hague, 289 N.W.2d at 46, "The mere fact that Wisconsin law [here substitute Texas law] may be different from Minnesota law is not sufficient reason to decline jurisdiction." On the other hand, if deciding the remaining issues of this case involves making new important precedent in fundamental or complex aspects of Texas property and trust law, then we think Minnesota should seriously consider declining jurisdiction. *632 The Fifth Circuit, in the somewhat analogous situation of deciding whether to certify a question of Florida law to the Florida courts, observed that among the factors to be considered are "the closeness of the question and the existence of sufficient sources of state law * * * to allow a principled rather than conjectural conclusion." State of Florida ex rel. Shevin v. Exxon Corp., 526 F.2d 266, 274-75 (5th Cir.1976). We think these considerations are apt here, too.[3]
We believe the fairest solution is to remand this issue to the district court. Applying the doctrine of forum non conveniens is, ordinarily, a discretionary ruling to be made by the trial court. Here the trial court has never expressly ruled on the issue. The remaining legal issues under Texas law need to be sorted out, an estimate made of their difficulty and importance, and this factor then put in the balance with the other factors to be weighed. The trial court, which would have the job of applying Texas law, is in the best position to do this.
The opinion of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings in accordance with this opinion.
NOTES
[1] "Upon the petition of any person appointed as trustee of an express trust by any * * * other written instrument * * *, the district or county court of the county wherein such trustee resides * * * shall consider the application to confirm the appointment of the trustee and specify the manner in which he shall qualify. Thereafter such district or county court, or the court to which jurisdiction is transferred, shall have jurisdiction of such trust as a proceeding in rem." Minn.Stat. § 501.33 (1982).

The parties agree that under this statute the Hennepin County District Court has in rem jurisdiction if Mr. Florance's letter amendment effectively appoints his wife and Dr. Gaertner, both Hennepin County, Minnesota, residents, as trustees of his trust. A court has the inherent power to determine if it has subject matter jurisdiction of a proceeding before it. Carmichael v. Iowa State Highway Commission, 156 N.W.2d 332, 340 (Iowa 1968). Where the parties disagree is whether, if Minnesota is found to have concurrent in rem jurisdiction with Texas, Minnesota should exercise that jurisdiction.
[2] The settlor's mother also argues that the doctrine of comity requires transfer of this litigation to Texas. Comity "is based on the theory that a court which first asserted jurisdiction will not be interfered with in the continuance of its assertion by another court of foreign jurisdiction until it is convenient and desirable that one give way to the other, and is not a rule of law, but one of practice, convenience, and expediency." State v. Taran, 253 Minn. 158, 163, 91 N.W.2d 444, 448 (1958). Comity and forum non conveniens are closely related, and in this instance, as a practical matter, are indistinguishable. The various practical considerations weigh more heavily here than who got to the courthouse in what state first. Moreover, despite all the maneuvering, neither side in this case has ever sought to enjoin the other from proceeding in a certain court.
[3] The settlor's mother argues that the issue bearing on jurisdiction over the trust already decided by the Minnesota courts, namely, whether the trust amendment was effective notwithstanding the settlor's death before the 1-year period for a notice to amend had elapsed, is a question of first impression under Texas law and, therefore, this issue, too, should be decided by the Texas courts. We disagree. This "notice" issue, while important to the case, was not so complicated or significant in any legal sense that it could not be, as it was, decided in Minnesota. We might add that labeling a legal issue as one of first impression sometimes gives it an aura of importance or significance it does not deserve. There are few appellate legal issues, if suitably framed, that cannot be said to be of "first impression."