In the Matter of the TRUSTEESHIP
CREATED BY the CITY OF
SHERIDAN, COLORADO.

Nos. C6–98–1673, C9–98–1702
and C4–98–1722.

Court of Appeals of Minnesota.

May 5, 1999.

William F. Mohrman, Mohrman & Co., P.A., Minneapolis, for appellants Colorado Farm Bureau Mutual Insurance Company, Sarco & Company, Isaak Bond Investments and Exempt Enterprises, Curt Kaiser, First National Bank of Flagler, Colorado, North Bank, Arline Doblin, State Bank of Wiley,

Leon and Emily Selig, Farmers National Bank of Geneseo n/k/a Norwest Bank of Illinois, and Douglas Walliser.

Patrick J. McLaughlin, Virginia Anne Housum, Dorsey & Whitney L.L.P., Minneapolis, for respondent U.S. Bank Trust National Association.

Considered and decided by LANSING, Presiding Judge, WILLIS, Judge, and SHUMAKER, Judge.

## OPINION

WILLIS, Judge.

In an appeal from the district court's order in response to the trustee's supplemental petition, trust beneficiaries challenge the court's determinations that (1) it had jurisdiction over the trust, (2) the trust instrument gave the trustee the authority to sell a trust asset, and (3) the trustee did not breach its fiduciary duties. The beneficiaries also appeal from the district court's approval of the trustee's fees. We affirm the court's determination that it had jurisdiction and that the trustee acted in accordance with the trust and did not breach its fiduciary duties. We reverse and remand for determination of the reasonableness of the trustee's claimed fees.

## FACTS

Appellants are Certificate of Participation holders under a trust indenture created in 1986 to finance the construction of a municipal facility for the City of Sheridan, Colorado. Under the terms of the trust indenture, the city sold certificates totaling $3,525,000 in value. After the facility was built, the city deeded the property and the facility to the trust, and the trust leased the facility back to the city and distributed the income from lease payments to the certificate holders (the trust beneficiaries). In 1988, the city issued new certificates to the certificate holders so that the city could take advantage of lower interest rates. When the new certificates were issued, the predecessor of U.S. Bank Trust National Association became the trustee.

In 1994, the city exercised its right to terminate the lease. It claimed it could not make the rental payments and proposed a short-term lease. In November 1994, the trustee petitioned Ramsey County District Court for instruction regarding whether to accept the short-term lease. In December 1994, the court assumed jurisdiction over the administration of the trust and instructed the trustee to enter into a short-term lease with the city.

In 1995, the trustee filed a supplemental petition requesting the court to confirm that the trustee had not violated the trust by petitioning the court for instruction on the short-term lease. In response to the petition, one of the certificate holders submitted a statement to the court that indicated he would challenge the court's jurisdiction if the trustee sought to extend the short-term lease or if the court approved an extension of the short-term lease. The court found that the trustee had not violated the trust and that expenses incurred in securing the instruction were proper, and the court continued its jurisdiction over the trust.

In February 1996, the city commenced eminent domain proceedings against the facility. The city offered to pay $642,000 for the facility based on an appraisal, although the outstanding principal amount of the certificates at that time was $3,250,000. The city's offer was also less than the amount that the trust instrument required the city to pay if it chose to purchase the facility during the lease term. The trustee contested the valuation, and the city eventually raised its offer to $1,800,000.

In November 1996, the trustee sought instruction regarding whether it should accept the city's offer to buy the facility by filing a second supplemental petition with the district court. The trustee also held a meeting of the certificate holders, who voted to oppose the offer. After the meeting, opposing certificate holders contested the district court's jurisdiction to consider the petition and opposed the offer. In April 1997, the court found it had jurisdiction and ordered the trustee to reject the offer, to contest the right of the city to use the condemnation proceeding to acquire the facility, and to dispute the city's valuation of the facility in proceedings in Colorado.

In October 1997, the city leased another location and vacated the facility. The trustee attempted to lease the facility but was unable

to find another lessee because of the use-specific nature of the facility, a deed restriction limiting the facility's use to governmental purposes, and zoning problems. Then, in April 1998, the city made an offer to settle all pending litigation and to purchase the facility for slightly more than $2,000,000. The trustee polled the certificate holders by mail, and they voted to oppose the new offer. The trustee then filed a third supplemental petition with the court, seeking instruction on the offer. The trustee also sought to be discharged and sought final approval of its fees and expenses.

The court ordered the trustee to accept the offer, discharged the trustee, and approved its fees and expenses. The trustee has since accepted the offer and sold the facility to the city. The opposing certificate holders appeal, asserting that the court erred in finding it had jurisdiction, in finding that the trust instrument gave the trustee authority to sell the facility to the city, and in approving the trustee's fees and expenses. The opposing certificate holders also allege that the district court erred in finding that the sale of the facility was not a breach of the trustee's fiduciary duties.

## ISSUES

I. Did the district court err in determining that it had jurisdiction over the trust?

II. Did the district court err in concluding that the trust instrument gave the trustee authority to sell the facility to the city?

III. Did the district court abuse its discretion in determining the trustee did not breach its fiduciary duties in selling the facility?

IV. Did the district court abuse its discretion in approving the trustee's fees and expenses?

## ANALYSIS

### I. Jurisdiction

A. *Subject–Matter Jurisdiction*

Subject-matter jurisdiction is a "court's power to hear and determine cases of the general class or category to which proceedings in question belong." *Black's Law Dictionary* 1425 (6th ed.1990); *see Kansas City S. Ry. v. Great Lakes Carbon Corp.,*

624 F.2d 822, 825–26 (8th Cir.1980) (distinguishing a "total want of jurisdiction" from "an error in the exercise of jurisdiction"). A court's lack of subject-matter jurisdiction may be raised at any time. *Mangos v. Mangos,* 264 Minn. 198, 202, 117 N.W.2d 916, 918 (1962). The opposing certificate holders challenge the district court's subject-matter jurisdiction over the trust. But their challenge blurs the distinction between subject-matter jurisdiction and in rem jurisdiction, and their arguments address the court's in rem jurisdiction. Under Minn.Stat. § 501B.16 (1998), district courts have subject-matter jurisdiction over issues involving trusts. We therefore examine the opposing certificate holders' jurisdictional challenge by application of principles of in personam and in rem jurisdiction.

B. *In Personam and In Rem Jurisdiction*

Jurisdiction over a trust involves both in personam and in rem jurisdiction. A court's jurisdiction over property, its in rem jurisdiction, is its power "over a thing so that its judgment is valid as against the rights of every person in the thing." *Black's Law Dictionary* 854 (6th ed.1990). But a trust consists not only of property, but also of the trust instrument, the trust's beneficiaries and trustees, and the trust administrator. Recognizing this, courts have analyzed a number of factors in determining whether they have jurisdiction over a trust, including (1) the location of the trust property (the situs of the trust assets), (2) the domicile of the trust beneficiaries, (3) the domicile of the trustees, (4) the location of the trust administrator, (5) the extent to which the litigation has been resolved, (6) the applicable law, and (7) an analysis of *forum non conveniens* principles. *In re Trust of Florance,* 360 N.W.2d 626, 630–31 (Minn.1985); *In re Trust of Cary,* 313 N.W.2d 625, 628 (Minn.1981); *Doerr v. Warner,* 247 Minn. 98, 107, 76 N.W.2d 505, 513 (1956); *see* George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* § 291, at 222–32 (rev.2d ed.1992) (discussing problems and general principles regarding multi-state trusts).

Here, two factors disfavor a Minnesota court's assertion of jurisdiction over the trust: The facility, which represented the majority of the trust's assets, is located in Colorado, and Colorado is also the domicile of most of the beneficiaries. *See* Restatement (Second) of Conflict of Laws § 276 (1971) (providing that administration of trust property consisting of interest in land is generally supervised by courts of situs of trust property).

But other factors favor a Minnesota court's exercise of jurisdiction. The trustee is located in Minnesota, and the trust is administered here. In addition, the remaining three factors, which were not analyzed by the district court, favor jurisdiction in Minnesota. First, the issues raised regarding the administration of this trust have, for the most part, been resolved. The district court interpreted the trust instrument, ordered the trustee to dispose of the property, found that the trustee did not breach its fiduciary duties, and ordered payment of the trustee's fees and expenses. In addition, the order, which is the court's fourth order relating to the trust, was issued by the court in the fifth year of its exercise of jurisdiction over the trust. *See Florance*, 360 N.W.2d at 628–29 (finding court was appropriate forum because it had exercised jurisdiction for two years and significantly resolved issue).

Second, although the trust instrument's choice-of-law provision makes Colorado law applicable, Colorado statute provides:

> The court will not, over the objection of a party, entertain proceedings * * * involving a trust registered *or having its principal place of administration in another state*, except when all appropriate parties could not be bound by litigation in the courts of the state where the trust is registered or has its principal place of administration, or when the interests of justice otherwise would seriously be impaired.

Colo.Rev.Stat. § 15–16–203 (1998) (emphasis added). The opposing certificate holders have not asserted that all appropriate parties will not be bound by the Minnesota court's orders. Nor have they demonstrated that exercise of jurisdiction by a Minnesota court seriously impairs the interests of justice.

Third, an examination of *forum non conveniens* principles shows the doctrine does not disfavor exercise of jurisdiction by a Minnesota court. A district court's decision on a *forum non conveniens* challenge will not be reversed absent an abuse of discretion. *Bergquist v. Medtronic, Inc.*, 379 N.W.2d 508, 511–12 (Minn.1986); *Florance*, 360 N.W.2d at 630–31. Although not directly addressed by the district court in its orders, the district court implicitly recognized Minnesota as an appropriate forum. The location in Minnesota of the trustee and the trust administrator's records support this result. *See Cary*, 313 N.W.2d at 628 (finding trust's administration at location for 15 years favored location's jurisdiction).

The majority of the factors used to analyze in personam and in rem jurisdiction, therefore, favor the exercise of jurisdiction over the trust by a Minnesota court. The conclusion reached by applying the multi-factor analysis is in accord with that reached by examining the appropriateness of the forum based on the nature of the issues raised, an alternative approach suggested by a leading commentator. *See* VA Austin Wakeman Scott & William Franklin Fratcher, *The Law of Trusts* § 646, at 512–13 (4th ed.1989) (discussing question of jurisdiction in courts other than those of state of situs of trust property). The issues the opposing certificate holders have raised involve interpretation of the trust instrument, whether the trustee breached its fiduciary duties, and the appropriateness of the trustee's fees and expenses. All of these issues relate to administration of the trust, rather than to the trust's real property. *See id.* The district court recognized the distinction between control over the trust and control over the land, and it followed the Restatement principles by retaining jurisdiction over the trust and ordering the trustee to oppose the city's eminent domain proceedings in Colorado courts. *See* Restatement (Second) of Conflict of Laws § 276 cmt. b ("A court of a state other than that of the situs may exercise jurisdiction if this does not unduly interfere with the control by the courts of the situs."). The case before us is analogous to an action involving an accounting by a trustee, which allows a court to "entertain the action if it has juris-

diction over the trustee, even though the trust property is land situated in another state." VA Scott & Fratcher, *supra*, § 646, at 513.

■ The opposing certificate holders also raise a number of other challenges to the court's exercise of jurisdiction over the third supplemental petition under Minn.Stat. § 501B.16. They assert that (1) the court's jurisdiction, if any, was limited to Minn.Stat. § 501B.46 (1998), which relates to real property, (2) Minn.Stat. § 501B.16 does not apply to trusts in the nature of mortgages, (3) Minn.Stat. § 501B.17 (1998) indicates the venue was improper, and (4) under Colorado law, which applies to the trust, a Colorado court could compel the trustee to administer the trust in Colorado. The opposing certificate holders raised none of these arguments in the district court. Appellate review of arguments raised for the first time on appeal is inappropriate. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (reviewing court will not consider matters not argued or considered in district court).

■ But even if appellate review were appropriate, these arguments would fail on the merits. First, Minn.Stat. § 501B.46 provides that if the assets of a trust

> include real property in this state that the trustee is not, under the terms of the trust, then permitted to sell, * * * the trustee * * * may petition an appropriate district court

for an order directing the trustee to sell the property. Minn.Stat. § 501B.46(b). This section does not apply here because the trust's real property is in Colorado, not in Minnesota. Moreover, as discussed in more detail below, the trust instrument gave the trustee the authority to sell the property. Therefore, section 501B.46 does not apply, and the court appropriately exercised jurisdiction under section 501B.16. *See* Minn. Stat. § 501B.24 (1998) (providing that once court determines it has jurisdiction, its jurisdiction continues until transferred or terminated).

■ Second, although Minn.Stat. § 501B.16 does "not apply to trusts in the nature of mortgages," it applies, "unless otherwise provided in the trust instrument," to trusts established in connection with government bond issues. Minn.Stat. § 501B.25

(1998). The sale of certificates to finance a municipal facility is more analogous to a governmental bond issue than to a mortgage.

■ Third, venue was proper under Minn.Stat. § 501B.17. Although a petition involving a trust holding real property may be filed in the county where the real property is located, it may also be filed in the county where the trustee has its main place of business. *Compare* Minn.Stat. § 501B.17(2) (allowing petition involving nontestamentary trust to be filed "in the district court for the county where a trustee having custody of part or all of the trust assets resides or has a main place of business"), *with* Minn.Stat. § 501B.17(3) (allowing petition involving trust holding real property "in the district court for any county in which the real estate is situated").

Fourth, the opposing certificate holders claim that Colorado courts have jurisdiction over the trust in light of the trust instrument's choice-of-law provision and a Colorado statute that gives Colorado courts the authority to compel administration of the trust in Colorado. But the statute they cite in fact provides:

> A trustee is under a continuing duty to administer the trust at a place appropriate to the purposes of the trust and to its sound, efficient management. If the principal place of administration becomes inappropriate for any reason, the court may enter any order furthering efficient administration and the interests of beneficiaries * * *.

Colo.Rev.Stat. § 15–16–305 (1998). The opposing certificate holders have not shown that administration of the trust in Minnesota was inappropriate.

The opposing certificate holders, therefore, have failed to demonstrate that the district court erred in determining it had jurisdiction over the trust. Both the multi-factor analysis and a forum examination based on the nature of the issues raised lead to the conclusion that Minnesota courts have jurisdiction over the trust.

## II. Trust Interpretation

The opposing certificate holders also challenge the court's interpretation of the terms of the trust relating to the sale of the facility. Interpretation of a trust is a question of law reviewed de novo. *In re Trusts Created by Ferguson*, 929 P.2d 33, 35 (Colo.Ct.App.1996). The guiding principle of trust interpretation is to give effect to the settlor's or testator's intent. *Id.* We interpret the trust under Colorado law because of the trust instrument's choice-of-law provision.

A trustee "owes a fiduciary duty to the beneficiaries of the trust." *Wright v. Wright*, 182 Colo. 425, 514 P.2d 73, 75 (1973) (en banc). A trustee's powers are limited to the authority conferred by the trust instrument. *Bent–Otero Imp. Co. v. Whitehead*, 25 Colo. 354, 54 P. 1023, 1024 (1898); Restatement (Second) of Trusts §§ 164 (1959) (stating that terms of trust instrument determine extent of trustee's authority), 186 (1959) (stating that trustee can properly exercise its authority when conferred on it "in specific words by the terms of the trust" or when acts are "necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust"); *see Sword v. Marquette Nat'l Bank*, 252 Minn. 544, 546, 91 N.W.2d 75, 76 (1958) (providing that trustee derives authority from instrument creating trust). A trustee may seek instruction from a court if a question arises regarding the extent of the trustee's authority "during the administration of the trust estate." *Mulcahy v. Johnson*, 80 Colo. 499, 252 P. 816, 821 (1927); *accord* Minn.Stat. § 501B.16.

The opposing certificate holders assert that the trustee could not convey the facility to the city without amending the trust instrument. Articles XVII, XVIII, and XIX of the trust instrument contain provisions relating to the sale of the facility. Article XVII provides that the city has the right to purchase the facility for a stated amount during the term of the lease. Article XVIII provides that, except for the remedies afforded under section 19.2 and other specified sections, the trustee will not sell the facility during the term of the lease agreement with the city.

Under Article XIX, if the trustee determines "that Net Casualty Proceeds and other available moneys are not sufficient to pay all outstanding Certificates as provided in Section 15.3(a)," the trustee can sell the facility "upon such terms as are satisfactory to the [trustee] in the best interest of the Participants." The city terminated its lease of the facility in 1994, and the record shows that the trustee was unable to pay the certificate holders as provided in section 15.3(a). Thus, the conditions precedent to a sale provided for in section 19.2 were satisfied.

The opposing certificate holders do not contend that the conditions precedent for the trustee to act under section 19.2 did not exist. Rather, they assert that a sale of the facility to the city can only be made pursuant to the provisions of Articles XVII and XVIII of the trust instrument. But section 19.2(d) does not limit to whom the trustee may sell the facility. Nor do Articles XVII and XVIII state that they are the exclusive methods by which the city can purchase the facility. Nothing in the trust instrument demonstrates an intent to limit the trustee's authority to sell the facility after the city terminated its lease. Section 19.2(d) of the trust instrument, therefore, gave the trustee the authority to sell the facility to anyone, including the city.

## III. Fiduciary Duty

In addition to challenging the trustee's authority to sell the facility, the opposing certificate holders assert that the trustee breached its fiduciary duties by accepting the terms it did for the sale of the facility. "A trustee's duty of loyalty and of reasonable care dictates that he must seek to obtain the best price for trust property he is selling." *Marshall v. Grauberger*, 796 P.2d 34, 37 (Colo.Ct.App.1990). A district court's determination of whether a trustee breached its fiduciary duties is reviewed under an abuse-of-discretion standard. *See Linker v. Linker*, 492 P.2d 903, 904 (Colo.Ct.App.1971) (providing that court's decision to remove fiduciary is reviewed under abuse-of-discretion standard).

The record shows that the trustee was unable to lease the facility after the city

vacated it. Despite efforts to market the facility, the trustee received no offers and expressions of interest only in the range of $267,000 to $900,000. Furthermore, the trustee was paying $7,500 monthly to provide minimal maintenance and management of the facility, thereby depleting the trust's reserves. The record shows that the price offered by the city was the best price the trustee could obtain for the facility. In light of the record, we conclude that the district court did not abuse its discretion in determining that the trustee did not breach its fiduciary duties.

### IV. Trustee Fees

■ The award of a trustee's fees is reviewed under an abuse-of-discretion standard. *In re Life Ins. Trust Agreement of Julius F. Seeman*, 841 P.2d 403, 405 (Colo. Ct.App.1992); *accord In re Comstock's Will*, 219 Minn. 325, 340, 17 N.W.2d 656, 664 (1945). In response to the trustee's third supplemental petition, the district court ordered that

> [t]he [t]rustee shall use the funds available and to become available in the trust estate to pay its own fees and expenses, including attorney's fees and management fees.

But it made no findings regarding the reasonableness of the fees, and the record contains no explanation of the fees.

■ A court may award compensation only for work that is reasonably related to furthering a trust's interests. *Seeman*, 841 P.2d at 405; *see Kronzer v. First Nat'l Bank*, 305 Minn. 415, 430–31, 235 N.W.2d 187, 196 (1975) (trustee may receive attorneys fees "only where those fees are incurred in rendering a benefit to the trust estate") (citations omitted). Reasonable fees incurred by the trustee in pursuing the eminent domain litigation furthered the trust's interests and were incurred in response to the court's instruction. *See In re Trust of Franzen*, 955 P.2d 1018, 1022 (Colo.1998) (en banc) (discussing acts of trustee undertaken in reliance on court order). But without findings or an explanation of the trustee's fees, it is not possible to determine that all of the claimed fees relate to activities that furthered the trust's interests. The court should have made findings to support its fee award. *See Seeman*, 841 P.2d at 405 (concluding that

court's findings were sufficient to support award); *see also In re Trust Known as Great N. Iron Ore Properties*, 311 N.W.2d 488, 493 (Minn.1981) (noting that award of significant fees requires explanation because court has "independent responsibility to protect trusts from unnecessary dissipation") (citations omitted). We therefore reverse and remand the matter to the district court to make findings and to determine the reasonableness of the trustee's claimed fees.

### DECISION

The situs of a trust's assets is only one of several factors to be considered in determining whether a court has jurisdiction over the trust. Here, both a multi-factor analysis and a forum examination based on the nature of the issues raised by the opposing certificate holders lead to the conclusion that the Minnesota court has jurisdiction. The trust instrument gave the trustee the authority to sell the facility upon the city's default. In addition, the district court did not abuse its discretion in finding that the trustee did not breach its fiduciary duties. But the district court must make findings regarding the reasonableness of the fees claimed by the trustee.

**Affirmed in part, reversed in part, and remanded.**